264

New Dells Lumber Company, Respondent, vs. Chicago, St. Paul, Minneapolis & Omaha Railway Company, Appellant.

*April 2—June 29, 1936.*

For the appellant there was a brief by *Bundy, Beach & Holland* of Eau Claire, and oral argument by *E. B. Bundy*.

For the respondent there was a brief by *Farr & MacLeod* of Eau Claire, attorneys, and *Arthur Wickham* of Milwaukee of counsel, and oral argument by *Mr. Wickham*.

FOWLER, J. The facts in this case are not in dispute. For some years prior to 1905, plaintiff operated a sawmill on the west bank of the Chippewa river in the city of Eau Claire. Up to that time it had been driving its logs down the Chippewa river to the mill. In 1905 it determined to make an arrangement with the defendant railroad company for spur trackage to the mill. A contract was entered into on October 2, 1905, whereby plaintiff was to furnish the right of way and grade it, and the railroad was to build the spur and furnish the ties and rails. The agreement was carried out, plaintiff acquiring the right of way from its mill west to the main line of the railroad, performing the necessary grading, and securing the necessary permits from the city of Eau Claire to operate the track over certain streets. The railroad company furnished the rails and ties and supervised the building of a bridge or trestle, which was necessary to the operation of the spur track and which was located west and north of the plaintiff's mill. After the spur was built, the defendant rendered services to the plaintiff. In 1906 plaintiff sold a piece of property adjacent to the spur and located between its mill and the main line of the railroad. The purchaser was one Reinhard, who established a coal and wood

business. As a part of the consideration for the deed, plaintiff granted Reinhard the privilege of using the spur track. A short spur was taken off the principal spur track in order to facilitate deliveries to Reinhard by defendant. In 1917 Reinhard by warranty deed conveyed to one Kessler his right, title, and interest in and to the lots purchased from plaintiff, including the rights and privileges with reference to the spur track. In 1932 plaintiff's mill was closed. In 1934 plaintiff sold to Kessler a block adjoining the spur track, reserving to the grantor a right-of-way easement for the spur track of sufficient width to conveniently operate railroad traffic thereon. Shortly thereafter, and in the same year, Kessler granted to the defendant railroad company an easement to construct a single-track railroad over Walnut street in front of block 13 in the city of Eau Claire, and released the company from any demands for damages to the lands described. In the spring of 1934 the plaintiff company sold part of its old mill site to Walker Brothers, and gave them an option to purchase additional land, none of which is affected by this action except that the land so purchased is to be served by the railroad right of way in question. On July 16, 1934, after some efforts to sell its right of way to the railroad company, plaintiff notified the defendant that it would not permit any maintenance, change, interference, or use of the right of way by the railroad for the accommodation of others than itself. It also notified the railroad company that it had no further use of the right of way for railroad purposes. Thereafter, the defendant continued to use the spur track to serve Walker Brothers and Kessler precisely as it had formerly done, whereupon these proceedings under ch. 32, Stats., were commenced.

Plaintiff claims that the continuance of service to Kessler after receiving the notice in question constituted a taking. Defendant contends that the taking, if any there was, occurred either at the time when the track was constructed, or

in 1906, when plaintiff sold to Reinhard and granted the latter a right to use the spur for purposes of access to the property acquired. Sec. 1852, Stats. 1898, provided in substance that in cases where a railroad corporation shall not have acquired title to the lands upon which it shall have constructed its roadbed or tracks or any parts thereof, it may be authorized to retain possession upon giving security to pay compensation therefor when finally ascertained. In *Babcock v. Chicago & N. W. R. Co.* 107 Wis. 280, 83 N. W. 316, a case relating to a spur. track built by the defendant railroad entirely on its own land, but the embankment of which extended onto a portion of plaintiff's land, this court said:

"By a long line of decisions, commencing with an intimation in *Buchner v. Chicago, M. & N. W. R. Co.* 56 Wis. 403, collected and cited in *Frey v. Duluth, S. S. & A. R. Co.* 91 Wis. 309, and followed in *Hooe v. Chicago, M. & St. P. R. Co.* 98 Wis. 302, and *Kuhl v. Chicago & N. W. R. Co.* 101 Wis. 42, the force and effect of sec. 1852, Stats. 1898, has become fully established, to the extent that construction of its track by a railway company over the land of another, when consented to, either expressly or by tacit acquiescence, irrevocably transfers from the owner to the company the permanent right of occupation for operating purposes, leaving to the former owner only the right to obtain compensation in the manner specified in that section. . . ."

It is the position of defendant that when the defendant built its track upon plaintiff's premises with the express consent of plaintiff, there was a taking under the doctrine of this case, and that this precluded the possibility of a later taking. It is conceded that if defendant's premises are sound, plaintiff's right to compensation has long since ceased by operation of the statute of limitations. The question is not without difficulty, but it is our opinion that defendant's contention cannot be sustained. There is a clear distinction between situations in which a railroad company with the tacit or express acquiescence of the landowner builds a spur track

upon the latter's premises, and that in which at the request of the owner and in accordance with an express contract defining the rights and obligations of the parties, a track is constructed for the accommodation of the landowner. In *Maginnis v. Knickerbocker Ice Co.* 112 Wis. 385, 88 N. W. 300, this court adverted to the distinction. It was held that the doctrine of the *Babcock Case, supra,* does not apply, (1) where the track was laid down and operated for purely private purposes, and (2) where the entry for that purpose is referable to an express contract. The court said:

"... It has often been held that if the owner of real estate permits a railway company to occupy the same with a public railway track, he will be deemed to have consented to take, as compensation for the permanent use thereof, what he can obtain by the procedure laid down by the statutes for the protection of his constitutional rights. But it has never been held, and it would be manifestly absurd to hold, that consent can be obtained, expressly or by implication, for the occupancy of land by a railway company for a private purpose, and the possession thus obtained be referred to as evidence of consent to the occupancy of the property for public purposes, so as to render the doctrine mentioned applicable."

This doctrine is plainly applicable here and needs no further elucidation. The construction of the track in accordance with the contract between the parties and for the purely private purposes of plaintiff did not constitute a taking, and there was no cause of action upon which a statute of limitations could operate. If the construction of the track under these circumstances did not constitute a taking for public purposes, neither did the sale of land to Reinhard, which was solely an act of the plaintiff. Although the sale to Reinhard and the granting to him of the right to use the spur track has significance, we think it cannot be urged as evidence of a taking in the year 1906.

The next question is whether there was a taking in 1934. It is plaintiff's contention that since this was a private track,

built for plaintiff's convenience, plaintiff had a right at any time to abandon the right of way and use of the track, and that a continuance by the defendant of service to Kessler was a taking for public purposes. Sec. 1802, Stats. 1898, provided as follows:

"The owner of any elevator, warehouse, mill, lumber, coal or wood yard within the yard limits of any station or terminus of any railroad may, at his own expense, construct a railroad track from such elevator, warehouse, mill or yard to such railroad and connect with the same by a switch at a point within the yard limits of such station or terminus, and the railroad corporation shall allow such connection. Such sidetrack and switch shall at all times be under the control and management of and be kept in repair and operated for the benefit of such owner or his assigns by such corporation; but the actual cost of so maintaining and operating the same shall be paid monthly by the owner thereof; and in case of his neglect to so pay the same upon demand the obligation of this section upon any such corporation shall cease until such payment be made in full. And no such railroad track constructed before the eleventh day of May, 1891, shall be removed without first giving the parties owning such elevator, warehouse, mill or yard six months' notice of such removal."

This statute applied solely to private tracks and required as to such tracks that the tracks be operated for the benefit of "such owner or his assigns" by the railroad. See *Bartlett v. Chicago & N. W. R. Co.* 96 Wis. 335, 71 N. W. 598. The statute was in force and operation in 1906, when in a deed to Reinhard plaintiff conveyed:

"That portion of lots one (1) and ten (10) of block fourteen (14) of R. F. Wilson's addition to Eau Claire now in the city of Eau Claire lying south of a line parallel with and sixteen (16) feet south from the center line of the railway track which extends along the northerly edge of said lots, together with the right to construct and use a spur railroad track across said strip of land sixteen (16) feet in width to connect with said main track: also the right to run cars from said spur track over said main track, provided however that

any use which the said grantee, his heirs or assigns may make of said main track shall not at any time obstruct or interfere with the use of said main track by said grantor, its successors or assigns, whose right to such use shall at all times be prior and superior to that of the said grantee, his heirs or assigns: excepting and reserving to said grantor the right to extend and continue in an easterly direction any spur railroad track that the said grantee, his heirs or assigns may erect upon the premises above described and the right to connect with and use such spur track in running cars over the same: also reserving to said grantor the first right to repurchase from said grantee, the property and rights hereby conveyed at any time that said grantee may desire to sell the same. The said grantee to make no sale thereof without first giving the grantor an opportunity of purchasing the same at an equal price."

There is nothing in the deed to indicate that the rights created in Reinhard are in any manner revocable by plaintiff. While the deed provided that plaintiff was to have priority of use of the spur track, there is nothing upon which to base the conclusion that Reinhard or his assigns could be deprived of this limited right by plaintiff, at least so long as the spur track existed. The obligation of defendant under the statute was to maintain service along this private spur track for the benefit of plaintiff and its assigns, and because of the irrevocable character of its grant to Reinhard, plaintiff could not prohibit service of the latter or his assigns by a notice to the defendant. Plaintiff created the factual situation, and the statute operated upon that and imposed an obligation upon defendant to serve those to whom plaintiff had granted rights in the track. It seems clear to us that neither the original service of Reinhard by the railroad nor the continued service of Kessler after plaintiff's prohibition constituted a taking.

It is contended on the part of plaintiff that since the right of way was originally obtained for the purpose of serving plaintiff's mill, the right of its grantees to use the track could last no longer than the life of the right of way, and that when

plaintiff abandoned use of the track for mill purposes, the easement or license, whichever it was, came to an end. We do not so read the grant. While it may be true that plaintiff had no obligation to keep the tracks in place or repair, its grantees had the right to use the tracks as long as they were there, and for just so long was the railroad obligated to serve them as assignees of the plaintiff. If and when, with the consent of the public service commission of Wisconsin under the provisions of sec. 190.16, Stats., plaintiff dismantles the tracks, it may be that the rights of its grantees will terminate. As to this we express no opinion, but we are satisfied that a taking for railroad purposes cannot be predicated upon a continuance of service to Kessler.

The defendant objects that plaintiff's showing of title is defective in two respects. The first is that plaintiff showed no title whatever to block 17. This block contains the portion of the right of way immediately adjoining defendant's main line. The right of way over block 17 is upon land owned by the city of Eau Claire and used as school grounds. The second is that plaintiff has shown no record title or easement giving it an assignable interest or right of way across the streets of the city of Eau Claire. In support of this contention, reference is made to plaintiff's petition to the common council of the city of Eau Claire for permission to build and maintain the spur track in question according to the route indicated on an annexed map. In addition to this, the resolution adopted by the common council of the city of Eau Claire was to the effect that the petition is granted subject to certain conditions respecting the grading of certain streets subjected. It is claimed that this resolution simply amounts to permission to cross streets of the city of Eau Claire and contains no mention of the rights of plaintiff to maintain a track on block 17. It is also objected that the petition and proceedings do not even mention the names of the streets to be affected by the proceedings. The reason for

this is apparent. Permission was requested to construct and maintain a track as indicated upon a map attached to the petition. Taken in connection with the map, the petition is sufficiently broad to solicit, and the resolution to grant, permission to maintain the track along the route pointed out on the map to the full extent that permission was necessary from the city. It is further claimed that, assuming that the resolution amounted to a permission sufficiently broad to cover the entire route of the spur track, it is a mere license and not an easement, and that being merely a revocable privilege it is not assignable. Defendant is hardly in a position to raise this objection. It proposes to and has taken for railroad purposes (a portion of) the track in its present state. It (such portion) was being used up to this time by plaintiff, and defendant proposes to continue to use it in its entirety. If it is a fact that the permission of the city previously granted may be revoked, that is a proper consideration with reference to damages and may operate to their diminution. Since defendant has taken and is now enjoying whatever rights plaintiff had to maintain the (portion of the) track (involved) it must pay whatever those rights are reasonably worth.

Plaintiff's contention (that there has been a taking of its property by defendant) offers greater difficulty. It is founded on the claim that after plaintiff's notice, defendant did not limit its use of the right of way to the shipment of freight for Kessler, but tore up and remodeled the tracks east of Kessler's property (between Kessler's property and the site of plaintiff's mill), that it destroyed plaintiff's easement on block 13, damaged plaintiff's property in block 12, acquired new trackage and industry sites on its own land east of First street, acquired title from Walker Brothers of land occupied by its new tracks, and imposed an additional burden on plaintiff's property to serve all these additional purposes. In other words, it is claimed that defendant made use of the plaintiff's spur track at a point beyond that necessary to serve Kessler,

and that it reconstructed the track and extended it in such a way as to serve purposes of its own. It is claimed that the spur track must be treated as a unit, and that its use of the portion lying between Kessler's property and the plaintiff's mill could only be effective by the use of the portion of the track lying between Kessler's and the defendant's main line. From this it is argued that whatever taking there was, was a taking for railroad purposes, and that defendant's entire use of the track is referable to these purposes.

We are of opinion that while the contention of plaintiff that there was a taking of its entire right of way by defendant cannot be sustained, there was a taking by defendant of the portion of its right of way beyond the point where the Kessler spur joins the plaintiff's spur. Plaintiff's spur was a private spur. The defendant's right to use it was coextensive with its duty to serve. This duty, after plaintiff's notice, only extended to serving Kessler. When, as appears from the record, defendant assumed to use the track to serve Walker Brothers, who had no right to use the spur, and to reconstruct and extend the track for its own purposes, a taking occurred for which the defendant must compensate the plaintiff. This taking, however, was limited to the portion of the plaintiff's roadbed and right of way lying beyond the point where the spur serving the Kessler plant leaves the right of way of the plaintiff. Up to this point the plaintiff has granted to Reinhard, and Reinhard has assigned to Kessler, the right to use of the right of way for serving the property conveyed to Reinhard. This right the plaintiff could not take away, nor could the defendant cease to serve Kessler without the consent of the public service commission. The plaintiff by its own act could not take away what it had granted, nor what the law prohibited the defendant from taking away without the consent of the commission. The defendant was under the positive duty to serve Kessler, and under the deeds of plaintiff and Reinhard had the right to use

the right of way and track up to this point to serve him. The notice of the plaintiff to the defendant to cease use of its right of way was only effectual to stop rightful use beyond the point stated. The use of the right of way up to this point to serve others than Kessler imposed no extra burden upon the plaintiff. The plaintiff is exonerated by its original contract from the upkeep of the right of way. The expense and duty of that is imposed by the contract upon the defendant. While additional use of the track by the defendant to serve others than Kessler may increase the expense to the defendant, it imposes no expense, inconvenience, loss, or injury upon the plaintiff. It is true that the defendant is making a use other than the right of use granted to Kessler which the plaintiff is bound to permit the defendant to render. But this implies no additional burden whatever upon the plaintiff. The doctrine that condemnation lies on subjecting adjacent property to an additional burden of servitude by using a streetcar track for interurban traffic, when only use for local passenger transportation is covered by the company's franchise, or for so subjecting it to an additional burden for using it for transportation of merchandise, baggage, mail, and express matter when the company's franchise covers only passenger transportation, as held in *Younkin v. Milwaukee L., H. & T. Co.* 120 Wis. 477, 98 N. W. 215, and *Chicago & N. W. R. Co. v. Milwaukee, R. & K. Electric R. Co.* 95 Wis. 561, 70 N. W. 678, 37 L. R. A. 856, has no application here. The right of the passage of trains existing, increase of the number of trains by increase of traffic does not create liability to condemnation by reason of the increased use. The plaintiff had the right to demand that the defendant discontinue use of its right of way beyond the Kessler spur, and for the continuance of use beyond that point by the defendant after the notice to discontinue was given, condemnation lies. But the plaintiff cannot require discontinuance of use up to that point, and for such use as

the plaintiff cannot discontinue, condemnation does not lie. It is true that the property affected must be considered as a unit. But the property of the plaintiff affected in the instant case is what lies beyond the point where the Kessler spur joins the plaintiff's spur. The plaintiff's property up to that point is not at all affected by the use in serving others than Kessler.

The briefs discuss the question whether the proper measure of damages was applied in the instant case. As the property up to the Kessler spur is not subject to condemnation, and the damages awarded included compensation for that portion of the plaintiff's property, it is manifest that there must be a new trial on the question of damages. The general rule in condemnation proceedings is that the amount of the recovery is the difference between the value of the property affected by the taking before and after the taking involved. It would seem that another statement of the rule, which properly considered amounts to the same thing, may better be applied in the instant case. It was given and sought to be applied by the jury in *Jeffery v. Chicago & M. E. R. Co.* 138 Wis. 1, 119 N. W. 879, and discussed in *Muscoda Bridge Co. v. Grant County*, 200 Wis. 185, 227 N. W. 863. The rule attempted to be applied in the *Jeffery Case* is that the landowner is entitled to recover, (1) the value of the strip taken, and (2) the amount by which the *remainder* of plaintiff's land affected by the taking of the strip is diminished. That rule, however difficult of application by the jury in the ordinary condemnation case, is particularly appropriate in the instant case, and more likely to lead to a correct award than the rule as stated in the *Muscoda Bridge Co. Case*. Element (1) in the instant case is the right of way, and (2) is the amount by which the two blocks of land still owned by plaintiff through which the right of way passes is diminished by reason of the right of way and incident switching through the land. The latter was fixed by the jury

in the instant case at $100. The other item is the value of the land included in the right of way taken and the value of the roadbed and structures located upon this right of way constructed by the plaintiff. The diminution in the value of the plaintiff's land through its subjection to the annoyance of trains passing and the cutting of lots into separate portions covers all the elements of damage except the value of the land taken up by the right of way and the value of the roadbed and structures thereon made by the plaintiff. When the plaintiff gets the value of the latter and the diminished value of the former, it will get its full deserts. So submitting the case on retrial will form a much more satisfactory measure of damages for the jury to apply than to submit it in any other way.

The statement of facts and this opinion up to the first paragraph on page 274, beginning, "We are of opinion," were prepared by Mr. Justice WICKHEM and, with the explanatory parenthetic insertions, express the views of the court upon the matters there covered.

*By the Court.*—The judgment of the circuit court is reversed, with directions for assessment of damages for the property taken as indicated in the opinion.

WICKHEM, J. (*dissenting*). I cannot agree that the taking by defendant is as limited as found by the court. I see no escape from the conclusion that the entire spur track was used by defendant for purposes other than to serve plaintiff and Kessler. I am unable to see how it is possible for defendant to use the spur track beyond Kessler's without also using it from the main line to Kessler's. Certainly it is physically impossible to do so, and if the use made of the entire track is for defendant's purposes, that seems to me to constitute a taking of the entire track. Perhaps it might be possible to take the portion of the private spur track nearest the main line without taking the entire track, but defendant

cannot take the terminal without taking all. Kessler's right to use the spur track has significance in only two respects: (1) Defendants could not discontinue, nor be compelled by plaintiff to discontinue, service to Kessler. (2) The fact that Kessler had a limited right to use the private spur track may be considered to constitute an incumbrance affecting the value of the right of way to be taken account of in assessing damages. In this particular case there was no request for an instruction that this incumbrance be taken into account. Aside from this, it does not seem to me that under the peculiar circumstances of this case the failure so to instruct the jury could result in prejudice to defendant. This was a taking for railroad purposes. From the standpoint of the defendant railroad company, the easement to Kessler imposed no burdens that it did not assume by its taking for these purposes. The jury were entitled to consider the value of the property for its most valuable use which was for a railroad spur track, and its value for such use was not diminished by the existence of the easement. Had there been a taking for other purposes, it may well be that the easement to Kessler would have had an important bearing on damages. Here it had none, or very little.

I am authorized to state that Mr. Chief Justice ROSENBERRY and Mr. Justice MARTIN concur in this dissent.