NEW DELLS LUMBER COMPANY, Respondent, vs. CHICAGO, ST. PAUL, MINNEAPOLIS & OMAHA RAILWAY COMPANY, Appellant. [Case No. 106.]

*November 10, 1937—February 15, 1938.*

For the appellant there were briefs by *Bundy, Beach & Holland* of Eau Claire, attorneys, and *Warren Newcome* and *Alfred E. Rietz,* both of St. Paul, Minnesota, of counsel, and oral argument by *E. B. Bundy.*

For the respondent there were briefs by *Farr & MacLeod* of Eau Claire, attorneys, and *Arthur Wickham* of Milwaukee of counsel, and oral argument by *Mr. Wickham.*

The following opinion was filed December 7, 1937:

FOWLER, J. This case was before the court in April, 1936, and is reported in 222 Wis. 264, 268 N. W. 243. The facts are fully stated in the opinion then filed. The statements there made will not be here repeated, but are by this reference incorporated herein. We there held that condem-

nation did not lie for the portion of the strip west of the spur track designated as the Kessler spur. The compensation there involved was for the entire strip. We remanded the case with directions for denial of compensation for the portion west and retrial as to the portion east of the Kessler spur. Retrial was had and $2,250 awarded as compensation for condemnation of the use of the portion east of the Kessler spur.

The appellant appeals from the judgment on the ground that the award is excessive and made upon an erroneous theory of the trial judge evidenced by his instructions, and an erroneous view of the jury based upon such instructions, and upon incompetent evidence given by witnesses who were incompetent to give it.

The compensation to which plaintiff is entitled is based upon the damages to plaintiff resulting from the continuance of the use of a switch track over a strip of land owned by the plaintiff on which the track is located. The strip is on city block 14, and on the street running east and west adjacent to block 13, which lies east of block 14. The items of recovery involved are compensation for the use of the strip on block 14 for switching purposes, and the damage to property of the plaintiff adjacent to the street in block 12 lying on the opposite side of the street from block 13 and damages to property of plaintiff adjacent to the street in block 11 lying opposite block 14, if it has any property so lying in said block. In block 14 the plaintiff's strip of land is partially in the block and partially in the street, and is thirty-two feet wide. In block 13 the strip is entirely in the south half of the street, and is twenty-five feet wide. The plaintiff by deed conveyed to one Reinhard, and Reinhard by deed conveyed to one Kessler the portion of the lots in block 14 lying adjacent to the street that lay south of the strip, together with "the right to construct and use a spur railroad track

across said strip . . . to connect with said main [spur] track; also the right to run cars from said spur track over said main [spur] track." After the former decision of this court, Kessler quitclaimed to plaintiff the portion of block 14 lying north of the south line of said strip, to which Kessler had acquired no title, "also all rights and easements" which Kessler had "to use" the strip, "or to maintain a switch track thereon, or to switch or run cars on or over said land [strip] or right of way, including those rights and easements" acquired by Kessler "as a purchaser from Frank Reinhard and those which said Reinhard acquired" by another deed from plaintiff to other lots in block 14 adjoining the land first conveyed to him. This quitclaim deed also by its terms purported to surrender to the plaintiff and terminate all "rights and easements" which Kessler acquired from Reinhard "to construct or maintain a spur track on" the strip "or to run or switch cars on or over the [spur] railway track or right of way" of the plaintiff.

This deed of course had no effect on the title to the plaintiff's strip of land, as the title to the strip was not conveyed to Reinhard. The plaintiff contends that the deed conveys all rights of Kessler to be served by said main spur track over said strip. However, Kessler could not convey said rights separate from conveyance of the land to which said rights were appurtenant. Those rights constituted an easement. In an easement "there must be two distinct tenements,— the dominant, to which the right belongs, and the servient, upon which the obligation rests." Washburn, Easements (4th ed.), p. 3. In the instant case, the land first conveyed to Kessler is the dominant estate, and the plaintiff's strip of land on which the main spur is located is the servient estate. One "cannot by grant separate the easement from the principal estate to which it is appendant." Washburn, Easements (4th ed.), p. 42. "If one has a right of way

appendant or appurtenant to an estate, he cannot grant it separate and distinct from the land to which it belongs." Washburn, Easements (4th ed.), p. 12; *Durkee v. Jones, 27* Colo. 159, 60 Pac. 618. Thus as a conveyance of Kessler's easement the quitclaim deed had no effect. The owner of a dominant estate may, of course, surrender an easement appurtenant thereto to the owner of the servient estate, if the easement be capable of surrender, and the quitclaim deed purports to be a surrender of the easement of Kessler to the plaintiff as well as a conveyance thereof. But Kessler's easement is not capable of surrender. Sec. 190.16 (5), Stats., provides that no spur track such as is the main spur here involved shall be "removed, dismantled, or otherwise rendered unfit for service," except upon order of the public service commission. Sub. (4) (c) provides that whenever a spur track like that of the plaintiff has been constructed at the expense of the owner of any industry or enterprise, as the main spur track involved was originally constructed, every person who desires a connection therewith is entitled to such connection upon paying such portion of the construction as the public service commission shall determine. Under this statute the defendant is required to maintain the main spur track and to render service thereon to every owner of an industry that shall demand it. Kessler is such an owner. His plant is in continuous operation, and requires the transportation to it of wood, coal, and gasoline in order to continue. Reinhard acquired right to and paid the plaintiff for that service when the plaintiff conveyed his land in block 14 to him, and Kessler acquired and paid for that right when Reinhard conveyed the land to him. Such payment was comprised in the consideration for the deeds. Kessler, having paid for that service once, is not required to pay for it again. Thus the statute gives Kessler the absolute right to be served by the existing spur. The Railway Company cannot be released

from serving him, because the statute forbids it, except on order of the public service commission. The purported surrender of the right to be served by Kessler to the New Dells Lumber Company amounts to nothing, because the absolute right to service still exists in him. There is no surrender where what one attempts to surrender remains after the attempted surrender precisely as it existed before it. Such a purported surrender surrenders nothing. It is a nullity. Thus neither by conveyance nor surrender has Kessler parted with the right to be served by the Railway Company on the spur track involved.

The damages of the plaintiff by reason of condemning a right of way over the strip opposite block 13 is on a different basis. The plaintiff conveyed the entire block to Kessler. The deed conveys the strip on which the spur track is located, but reserves "a right-of-way easement" for "the present railway spur track." The strip is entirely in the street, and south of its center line. After the former decision of this court, the plaintiff procured a deed from Kessler purporting to "convey, release and quitclaim" to the plaintiff "all the right, title and interest in said right-of-way easement which was granted to, or acquired" by Kessler by his deed to block 13, "including all use or enjoyment of said easement, and also including any and all compensation which has accrued, or may accrue, because of the taking or damaging of said easement" through these proceedings. But Kessler by deed prior to the institution of the condemnation proceedings granted to the Railway Company "an easement and right of way of sufficient width upon which to construct a single track railway over, along and upon" the street in front of block 13. Thus the deed of Kessler to the plaintiff conveyed no right of way to the plaintiff, because the plaintiff had reserved the right of way, and it assigned no damages for the Railway Company's taking of the right of way because Kess-

ler had released to the Railway Company its damages for operating a spur track in the street. Kessler's release to the Railway Company was made when some change in the railway track was made, but there is only one track in the street, and it is the right of way for that track that is being condemned. So far, if at all, as that track occupies the right of way reserved by the plaintiff in Kessler's deed of the block, the plaintiff is entitled to damages for its occupation; but the deed of Kessler transferred nothing to the plaintiff, and nothing can be allowed for damages to Kessler's property in block 13 by reason of these proceedings.

The damages assessed by the jury to plaintiff's property in block 12 and in block 11, if any in the latter, by reason of the condemnation involved, were $50. The damages for the right to continue to run switching cars over the strip were assessed at $2,200. Land values in the vicinity are low. The total assessment of the land in block 13, approximately 350 by 250 feet in size, divided into eighteen lots, is $3,000, and the entire block was purchased by Kessler in 1934 for $2,000. This is the most recent sale anywhere in the vicinity. The total value of the land in block 12, the same size as block 13, also divided into eighteen lots, is $2,450. The land assessment of Kessler's four lots in block 14, lying next the street, is $1,800. The total assessment of the rest of block 14 is $2,550. This block is approximately 350 by 264 feet in size. For the right to maintain a switch track now serving only one industrial plant to the east of the Kessler spur, on a strip of land owned by the plaintiff thirty-two feet wide and two hundred sixty-four feet long in block 14, one half of which is in the street, and on a strip twenty-five feet wide for two hundred ninety-one feet entirely in the street on which the plaintiff owns a right of way for the track, the plaintiff was allowed $2,200. The grading of the track through block 14, and, as we infer, for part of the way in

front of block 13 had been done by the plaintiff, and allowance for the grading was included in the award. But with such allowance, the award seems grossly excessive. Apparently it was based upon some misconception of the jury either of fact or law. The appellant contends that it was so based.

The appellant's main contention in this regard is that the defendant's witnesses in giving their opinion evidence, and the jury in fixing value, took into consideration a supposed value of the strip of land "for railroad purposes" which it claims they might not rightly do, both because the witnesses had no experience to qualify them to judge value for such purposes, and because the evidence does not show any value for such purposes. As to general "railroad purposes," there is no evidence that the strip of land is likely to be used or is adapted to use for any such purpose. One of the maps shows a connection of the instant spur with a switch track of the Chicago, Minneapolis & St. Paul Railway Company to the south. This may perhaps support an inference that the latter railway might possibly want the spur to connect with the defendant's Shawtown line if it were abandoned by the defendant company, but that it would ever be required or wanted for that purpose is as conjectural as was demand for use for dockage or dam purposes in *Muscoda Bridge Co. v. Grant County,* 200 Wis. 185, 227 N. W. 863. We can find no evidence of likelihood of anyone ever wanting the strip for railway purposes of any sort, but the defendant, and the defendant's only use for it is as an industrial track to serve the Walker property and such other properties along the line as may require service in the future. Such value as it has for this limited purpose should be fixed by considering what price would be agreed upon by a railway company desiring but not compelled to buy, and an owner willing but not compelled to sell. No such basis was considered by the witnesses or by the jury. The court's instructions seem to have left it

to the jury to consider value for "railroad purposes" without imposing any limitations as to the kind of railroad use or reasonable likelihood of occasion for any use but the particular use involved in these proceedings.

The court's instructions were also erroneous for permitting the jury to make allowance for the fact that the right of way was secured in these proceedings without liability for damages to owners of property abutting on the spur. Abutting owners other than the plaintiff are entirely beside the case.

The appellant also contends that the witnesses and jury took the present cost of putting the roadbed in its present shape as an element to consider in fixing value of the improvement of the roadbed made by the plaintiff, whereas they could only properly consider the original cost to the plaintiff. Both were for consideration of the jury. The jury might give each such bearing as they deemed it rightly had upon the ultimate question of the value of the right of way being condemned; that is, what effect it would have upon the conclusion of value reached between a railway company desiring but not compelled to take over the right of way herein taken, and an owner of that right of way willing that it should be taken but not compelled to part with it.

The appellant also claims that the jury were permitted to include the value of the plaintiff's services in procuring from the city the right to put the spur track on the city streets. This was not proper for consideration. Consideration might properly be given to the fact that permission of the city had been procured for the placing of the railway track in the street in front of block 13 and across the cross streets adjacent to them for its effect on the value of the thing taken; due regard being given to the revocability or nonrevocability of that permission. The things for which allowance is to be made are the value of the right of way acquired by the

defendant through the proceedings, together with the damages to such property as the plaintiff owns adjacent to the street in blocks 12 and 11 by reason of the continuance, as distinguished from the removal of the railway track.

*By the Court.*—The judgment of the circuit court is reversed, and the cause remanded with directions to the circuit court to order a new trial.

The following opinion was filed February 15, 1938:

FOWLER, J. (*on motions for rehearing*). The plaintiff moves for a rehearing on the grounds that the court unduly restricted the allowance for damages in both cases and erroneously held that the defendant has not taken the plaintiff's property west of the Kessler spur because Kessler did not by his release to the plaintiff release the defendant from its obligation to serve Kessler.

We see no need to retract anything said in the opinion of the court respecting damages.

As to the other matter urged, the defendant's obligation to serve Kessler continues until the public service commission by an order made upon notice "to all parties interested, and for good cause shown," discontinues the spur. Sec. 190.16, subs. (1), (5), Stats. This view was inferentially disclosed in the original opinion of the court and directly expressed in the dissenting opinion filed in connection wherein it was stated (222 Wis. 264, 278, 268 N. W. 243, 249): "Defendant could not discontinue, nor be compelled by plaintiff to discontinue, service to Kessler." The inference that the court originally so held arises because the opinion of the court makes the fact that Walker had not acquired from the plaintiff the right to be served by the defendant over its spur the basis of the taking of the part of the spur east of the Kessler spur. Kessler had by his deed acquired from the

plaintiff the right to service by the defendant over its spur, and that right continued under the statutes until the public service commission authorized discontinuance of the spur. We held that making such use of the spur as the company was compelled by law to render could not be wangled into a taking of the spur from the plaintiff, and therefore there was no taking up to the Kessler spur but was a taking from that point on. We adhere to this opinion and to the opinion expressed in the instant case that the law imposes on the defendant the obligation to serve Kessler upon his request, notwithstanding his release or purported release to the plaintiff of the easement conferred by his deed to be served over the plaintiff's spur. Maybe that release would warrant the public service commission, in its judgment, to order discontinuance of the spur, but that is for the commission to determine. Maybe also we went too far in saying in the instant opinion that Kessler having once paid through the consideration for his deed for the right to be served over its spur could not be compelled by the plaintiff to pay for it again, in view of its purported surrender of the easement originally granted by the plaintiff, and in saying that Kessler's right to be served by the defendant was absolute as distinguished from depending on his paying the plaintiff for it what the commission should determine pursuant to sec. 190.16 (4) (c), Stats. As these particular questions were not before the court, the *dicta* in these respects are withdrawn, and the propositions covered by them are left for determination when they arise, if they ever arise.

It is claimed that if subs. (1) and (5) of sec. 190.16, Stats., be construed as requiring the defendant to continue to serve Kessler until the spur track to his plant is discontinued pursuant to the order of the public service commission, it is unconstitutional as taking property without due process. We think not. The plaintiff can apply to the public service

commission to compel Kessler to pay it such "equitable" sum as it shall fix for the use of the track to serve him. Sec. 190.16 (4) (c), Stats. The plaintiff is thus given "due process of law" to recover compensation for such use of the track as the defendant makes in serving Kessler.

It is urged that the court wrongly assumed that Kessler received service from the defendant after the execution of his deed releasing the plaintiff from its obligation to allow him the use of its tracks for serving him. If, as plaintiff claims, there is no evidence of Kessler's receiving any such service from the time of the execution of his deed up to the time of the trial of the action, his plant is located adjacent to the plaintiff's spur and his private spur is connected with that spur, his business is presumed to continue, and the connection by private spur into his plant with the spur of plaintiff is presumed to continue. The situation gives him the right to petition the public service commission to require the defendant to serve him on his demand if the defendant refuses. The defendant was not required at its peril either to assume that Kessler would never demand service, and on that assumption remove its rails and ties as plaintiff demanded, and thus violate the statute prohibiting such removal, or to refuse to remove them and render itself liable to condemnation proceedings by the plaintiff. The plaintiff cannot rightly demand that the defendant remove its rails and ties until it has procured an order from the public service commission for discontinuance of its spur, and the defendant is not subject to condemnation proceedings for refusal to remove them in absence of such order.

The motions for rehearing are denied, with $25 costs of motion in Case No. 106 and without costs in Case No. 107.