IN RE the MATTER OF a PARCEL OF LAND LOCATED ON GENEVA LAKE, TOWN OF LINN, WALWORTH COUNTY, WI: Lou KREPEL and Linda Krepel, his wife, Petitioners-Appellants,

v.

Esther DARNELL, a single person, Albert Steffen and Shirley Steffen, his wife, and Susie Tschurtz, a single person, Respondents-Respondents,

William SNELLGROVE, and Marjorie Snellgrove, his wife, G. Jawad, marital status unknown, and John Palmer and Carol Palmer, his wife, Respondents.

Court of Appeals

*No. 91–0140. Submitted on briefs August 9, 1991.—Decided October 23, 1991.*

(Also reported in 477 N.W.2d 333.)

On behalf of the defendants-appellants, the cause was submitted on the briefs of *Cheryl A. Mick* of *Gray & Mick* of Lake Geneva.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *David Allen Rasmussen* of *Darnell and Tschurtz* of Walworth.

Before Nettesheim, P.J., Brown and Anderson, JJ.

NETTESHEIM, P.J.   In this property rights case, the circuit court dismissed at summary judgment Lou and Linda Krepel's action for declaration of their claimed easement/access rights in property owned by Esther Darnell on Geneva Lake in Walworth county. The court dismissed the action because the Krepels based their easement claim upon conveyances outside the chain of title to their property. The circuit court also denied the Krepels' motion for reconsideration.

We conclude that the Krepels' easement claim does appear in their chain of title. Alternatively, we conclude that the Krepels' right to maintain this action is not governed by the chain of title to their property. There-

fore, we reverse the orders and remand for further proceedings.

## I. FACTS

The Krepels own one of seven properties along Shadow Lane, a roadway which is bounded by Geneva Lake to the east and South Shore Drive to the west in the Town of Linn, Walworth county. The seven lots were originally part of a single, long, rectangular tract of land which was owned in fee by a husband and wife, Jerome and Emma Ingalls. The seven lots were created as the original tract was divided and the lots then sold at various times between 1922 and 1959. Of these seven properties, only one—Lot 6, a parcel now owned by respondent Darnell—fronts on Geneva Lake. The remaining six lots are off the water.

Although we ultimately decide this case on basic principles governing the law of easements, we, at the admitted risk of confusion, find it necessary to recount in some detail the sequence of historical transactions germane to this case. For convenience, we will refer to the lots by the last digits of their tax parcel numbers.

Jerome and Emma Ingalls owned a rectangular parcel of land lying adjacent to Geneva Lake. In 1922, the Ingalls carved out from their land an off-water parcel, Lot 6A, and conveyed it to their daughter, Edna Fassbinder. This lot is now owned by the Krepels, the petitioners-appellants in this declaratory action. This deed contains no language creating or granting an easement.

In 1926, the Ingalls created and conveyed another parcel, Lot 5, to Walter and Nellie Snell. This deed, however, contained a grant of easement to the Snells and their "successors and assigns" for purposes of access to Geneva Lake. This grant was expressed as "a covenant

running with the land being a right appurtenant to the land herein conveyed . . .."

Thereafter, Jerome Ingalls died and, pursuant to his will and the 1928 final judgment in the estate proceedings, Jerome's interest in the remaining property was awarded to his wife Emma and his daughter Edna Fassbinder, who already owned Lot 6A pursuant to the 1922 transaction we have already described.

In 1929, Emma and Edna executed mutual conveyances to each other concerning this inherited property.[1] By these reciprocal transactions, Edna and Emma created Lot 4 and Edna deeded her interest in Lot 4 to Emma. In return, Emma deeded her interest in the inherited parcel to Edna. This conveyance contained the following easement language which is important to this case:

> As part consideration for the execution of this deed, it is covenanted and agreed that the grantee, her heirs, successors and assigns, shall receive and exercise certain rights which it is agreed are appurtenant to the premises herein conveyed, *which rights shall consist of an unrestricted use in common with other lot owners in the former Jerome Ingalls estate of a parcel of lake frontage constituting a tract One Hundred (100) feet in width East and West and varying in its North and South measurement from Ninety (90) feet on the East to Seventy (70) feet on the West.* Said tract of lake frontage is to be kept free and clear

---

[1]Respondents Darnell and Tschurtz contend that the Krepels have inaccurately portrayed Edna Fassbinder as a sole grantor on this and one other deed executed in 1950. Edna Fassbinder's husband, William Fassbinder, was also a grantor on those deeds, according to the respondents. We do not address such details because we deem them unnecessary to the resolution of the issue on appeal.

of all buildings or other obstructions of any kind *and
is to be used solely for park, beach and docking pur-
poses by purchasers of lots in the Jerome Ingalls
estate, their successors and assigns.* [Emphasis
added.]

Thus, following this transaction, Emma owned Lot 4,
the Snells owned Lot 5, and Edna owned Lot 6A (the
Krepels' present lot) plus the remainder of the original
parcel. Also, following this transaction, the inherited
parcel was burdened with an easement.

In 1950, Edna conveyed Lot 6A to Harry and Fran-
ces Banks by warranty deed. This deed is silent as to any
easement. However, in 1952, Edna executed a corrective
deed to the Bankses, "reconveying" Lot 6A. By this con-
veyance Edna also granted a "personal easement" to use
her lakefront property to the Bankses and "their heirs so
long as the [Bankses] or their heirs personally own" Lot
6A. Also important to this case is that this easement was
given to "use in common with other lot owners in the
former Jerome Ingalls estate . . .." This easement car-
ried the same legal description as that described in the
1929 conveyance from Edna to Emma.[2]

In 1964, Edna executed another conveyance impor-
tant to this case—a "corrective" deed to Helen Burke,
the heir of the original owner of Lot 5, Walter Snell. The
correction is not germane to this case. However, by this
deed Edna again granted to the "other lot owners in the
former Jerome Ingalls estate" exactly the same easement
in exactly the same words which she had previously cre-
ated and granted to the "other lot owners in the former

---

[2]This conveyance also created a separate easement for water
supply purposes. In 1959, Edna executed yet another deed to the
Bankses again conveying Lot 6A plus an additional twenty-five
feet. This deed, while making reference to the water supply ease-
ment, is silent as to the personal easement.

Jerome Ingalls estate" in her 1929 conveyance of Lot 4 to her mother Emma.

The Bankses subsequently sold Lot 6A to Margaret and James Fletcher. Following James' death, Margaret sold Lot 6A to the Krepels.

Over the years, some of the various parcels referred to above were further conveyed to subsequent purchasers. In addition, Edna created and sold off other lots from the original parcel. Some of these parcels also were conveyed to subsequent successors in interest. Although we do not specifically recount these transactions, we do note that certain of these conveyances expressly included or referenced the easement granted in the 1929 conveyance from Edna to Emma. Others did not.

At the time of her death, Edna owned the last remaining parcel, Lot 6, the riparian property adjoining Geneva Lake. Esther Darnell inherited this parcel from Edna's estate. This parcel is the object of the Krepels' claimed easement and the subject of this declaratory action.

Before addressing the appellate issue, we summarize the foregoing history. The only reference to the Krepels' claimed easement right *in the chain of title to their property, Lot 6A,* is in the 1952 deed wherein Edna granted the Bankses a personal easement to "use in common *with other lot owners in the former Jerome Ingalls estate . . .."* The Krepels' claimed easement right, however, does appear in conveyances outside their chain of title to Lot 6A: (1) in the 1929 conveyance from Emma to Edna creating Lot 4; and (2) in the 1964 corrective deed from Edna to Helen Burke concerning Lot 5. Although neither the Krepels, nor their predecessors in interest, were direct parties to these transactions, these conveyances specifically designated the "lot owners in the former Jerome Ingalls estate" as the beneficiaries of

the easements granted therein. In addition, these easements were occasionally referenced in other conveyances to which the Krepels and their predecessors in interest were not privy. The issue on appeal is whether this history permits the Krepels to pursue their claim.

## II. ANALYSIS

We stress that on appeal we address only the narrow grounds on which the trial court granted summary judgment to Darnell and dismissed the Krepels' action. The court ruled that the Krepels' chain of title to their property, Lot 6A, must include their easement claim. Because it did not, the court dismissed the Krepels' action.[3]

### A. THE KREPELS' CHAIN OF TITLE

Our first basis for reversal is direct and succinct. The trial court erred in its factual determination that the Krepels' easement claim lies outside the chain of title to their property, Lot 6A. The Krepels' claimed easement is referenced in the 1952 corrective deed from Edna Fassbinder to the Bankses. This deed concerns Lot 6A, the very lot which the Krepels now own. As such, the easement appears in the Krepels chain of title. The trial

---

[3]The Krepels' notice of appeal recites that the appeal is taken from three separate orders: an April 3, 1990 order granting summary judgment to Darnell; a May 9, 1990 order denying reconsideration of the summary judgment award; and two October 25, 1990 orders: one granting Darnell default on her cross-claim against G. Jawad and another dismissing the counterclaims of Darnell and Tschurtz against the Krepels. However, the appellate briefs address only the merits of the trial court's summary judgment ruling in favor of Darnell and against the Krepels. Our decision is similarly limited.

court's finding to the contrary is clearly erroneous. Section 805.17(2), Stats. On this narrow ground, we reverse. We make no judgment as to whether this conveyance served to create an easement running to the Krepels. The trial court did not advance to this question and we do not take it upon ourselves to prematurely do so.

## B. NECESSITY FOR CHAIN OF TITLE

Our second, and alternative, basis for reversal is more involved and complex. We disagree with the trial court's legal conclusion that the Krepels' easement claim must appear in their chain of title. Here again, we make no judgment as to whether those conveyances outside the Krepels' chain of title served to create an easement running to the Krepels. Again, the trial court did not advance to these questions and, again, nor do we. We proceed now to address this second basis for reversal at some length.

In their original one-count complaint, the Krepels sought a declaration of rights in Darnell's waterfront property.[4] Darnell moved for summary judgment.[5] The

---

[4]The Krepels' complaint named all potentially affected property owners as defendants. This action prompted answers by six of the seven respondents as well as several counterclaims and cross-claims. Our recitation of the procedural history of this action omits such matters; we set forth only those facts necessary for a determination of the issues as between Darnell and the Krepels.

[5]The Krepels later amended their complaint to include three additional counts: a claim for an irrevocable license to use the waterfront, a claim that Darnell is equitably estopped from prohibiting their use of the waterfront, and a claim for prescriptive rights to the waterfront. As noted, the summary judgment motion was in response to the first complaint. However, when the trial court heard the motion, the amended complaint had been

trial court concluded that the Krepels' easement claim failed because it did not appear in the chain of title to the property, Lot 6A, a matter we have already addressed. The trial court also applied sec. 893.33(6), Stats., to bar the Krepels' action. We now turn to this issue.

Section 893.33(6), Stats., provides that an action to enforce an easement must be brought: (1) within forty years of the recording of such instrument; or (2) within forty years of the recording of an instrument expressly referring to the easement. The court saw the Krepels' claim as resting on the 1926 and 1929 transactions—beyond the forty-year limitation period set out in the statute.[6]

We first state some basic principles of easement law. An easement is a permanent interest in another's land, with a right to enjoy it fully and without obstruction. *Hunter v. McDonald,* 78 Wis. 2d 338, 343, 254 N.W.2d 282, 285 (1977). In an easement, there are two distinct property interests—the dominant, which enjoys the privileges granted by an easement and the servient, which permits the exercise of those privileges. *See New Dells Lumber Co. v. Chicago, St. P., M. & Omaha R.R.,*

---

served, although answers had not as yet been filed. Nonetheless, the gravamen of the court's decision appears to travel to all the causes of action. On appeal, the Krepels complain that the trial court "prematurely" dismissed the new causes of action alleged in the amended complaint. Since we reverse the judgment and reinstate the amended complaint, we need not address this issue.

[6]The trial court did not view the 1964 conveyance from Edna to Burke as interrupting the running of the forty-year period. Here, the court returned to its "chain of title" analysis, noting that this transaction was not within the Krepels' chain of title to their property, Lot 6A.

226 Wis. 614, 619, 276 N.W. 632, 634 (1938). Use of an easement is one of the incidents of ownership of the dominant property interest, though this incident is enjoyed upon the land of another. R. Cunningham, W. Stoebuck & D. Whitman, the Law of Property sec. 8.10, at 461 (1984) [hereinafter Cunningham, Stoebuck & Whitman]. An easement can be used only in connection with the estate to which it belongs. *S.S. Kresge Co. v. Winkelman Realty Co.,* 260 Wis. 372, 376, 50 N.W.2d 920, 921 (1952).

An easement passes by a subsequent conveyance of the dominant estate without express mention in the conveyance. *Union Falls Power Co. v. Marinette County,* 238 Wis. 134, 141, 298 N.W. 598, 601 (1941). Generally, ownership of an appurtenant easement follows ownership of the dominant estate. W. Burby, Real Property sec. 25, at 67 (3d ed. 1965) [hereinafter Burby]. A covenant entered into between such parties that pertains to the easement may be enforced by or against their successors in interest. Burby, sec. 40, at 99.

We now address some easement principles which bear more directly upon this case. Although the trial court spoke in terms of "chain of title" when it invoked sec. 893.33(6), Stats., the court was in essence addressing "privity of estate." "Privity of estate" exists between the owner of an easement and the owner of the land which is burdened with the easement. Burby, sec. 40, at 100. This principle has two facets: first, "vertical privity" requiring that the burden and the benefit of the easement be enforced against remote parties only when such parties have succeeded to the grantor's and the grantee's estate; and second, "horizontal privity" which refers to the rela-

tionship between the original parties. Cunningham, Stoebuck & Whitman, sec. 8.18, at 477.

In this case, vertical privity as to the grantor is clearly satisfied. Darnell is Edna's successor in interest to Lot 6, having inherited this property from Edna's estate. This property is the servient estate, which was originally burdened with the easement in favor of the "lot owners in the Jerome Ingalls estate" by virtue of the 1929 conveyance from Edna to Emma. This burden was restated in the 1952 corrective deed from Edna to the Bankses and again restated in the 1964 corrective conveyance from Edna to Helen Burke.

Vertical privity as to the grantee side of the ledger is also satisfied in this case. The 1929 conveyance granted an easement to the "lot owners in the former Jerome Ingalls estate . . .." Assuming the Krepels' predecessors in title to Lot 6A qualify as such lot owners and assuming that any of the above conveyances were sufficient to create an easement (matters which were not decided by the trial court and which we do not decide here), the Krepels then stand as successors in interest to this grant.

It is the second facet of this inquiry, horizontal privity, which is invoked by the trial court's ruling. The trial court ruled that the Krepels' easement was outside their chain of title to Lot 6A because the Krepels' predecessors in title were not direct parties: (1) to the 1929 transaction between Emma and Edna, which initially created an easement for the lot owners of the Ingalls estate; nor (2) to the 1964 transaction between Edna and Helen Burke which "recreated" the easement for the lot owners of the Ingalls estate. Thus, the court concluded that the Krepels could not show any instrument in their chain of title documenting their claim during the forty-year period of sec. 893.33(6), Stats. We must, therefore, answer whether this condition is fatal to the Krepels'

claim.[7]

The merits of a horizontal privity requirement has been the subject of some debate:

> There is some authority for saying that horizontal privity will not be required for the *benefit* side of a covenant to run, though some form of horizontal privity might be necessary to the running of the *burden* side. Some writers deny that such a distinction does, or should exist. The usual justification for the distinction lies in the broad policy against encumbering land titles; a burden is an encumbrance, while a benefit is not.

Cunningham, Stoebuck & Whitman, sec. 8.18, at 478 (emphasis in original, footnotes omitted).

The upshot of this debate is that a horizontal privity requirement is not favored by modern thinking. *Id.* at 480. We share this view—particularly as it pertains to the burdened, or servient, estate. It makes little sense to require horizontal privity where the easement grant to third parties is recorded and the burden against the servient estate is thus made known to the world, including potential purchasers of the servient estate. As the commentators have noted, the concern here is that the record title of the servient estate reveal the burden, not that the record title of the dominant estate reveal the benefit. We conclude that horizontal privity is not required for enforcement of an easement by a successor in interest to the dominant estate.[8]

---

[7] Our discussion does not address the 1952 corrective deed from Edna to the Bankses since that conveyance is in the Krepels' chain of title to Lot 6A.

[8] We state here our awareness of *Strasson v. Montgomery,* 32 Wis. 52, 58 (1873), which holds that a reservation of a right to use

Here, Edna Fassbinder clearly had the authority to burden her property with an easement grant to the "lot owners in the former Jerome Ingalls estate" in both the 1929 and 1964 transactions. We conclude that this effort was not frustrated because Edna accomplished this grant in conveyances which also conveyed fee title to other parcels. A single instrument of conveyance may create an estate in land in one person and an easement in another. *See* Burby, sec. 27, at 71.

---

property to a stranger is of no effect. Such a rule has come under criticism. "Logically, a reservation or exception in favor of a person other than the grantor should be operative. Such third party is not a 'stranger' to the deed because he is named as a grantee." E. Burby, Real Property sec. 27, at 71 (3d ed. 1965). Regardless, the case at bar concerns an express grant of an easement right. It does not concern a case where the grantor conveys the property and then *reserves or excepts* a property right to a third party. To the extent that such rights to strangers might be invalid, such rule is limited to cases involving exceptions or reservations—not easements granted by direct and express grant. *See id.; see also* R. Cunningham, W. Stoebuck & D. Whitman, The Law of Property sec. 8.3, at 443–44 (1984).

The Krepels also cite *Boyden v. Roberts,* 131 Wis. 659, 111 N.W. 701 (1907), as supporting their claim that the trial court's chain of title analysis was improper. While *Boyden* does hold that the grantees' successors in interest may enforce the benefits of a restrictive covenant, the issue was whether the failure of the intervening conveyances to recite the restriction was fatal to enforcement of the easement. The supreme court ruled that it was not. *Id.* at 667, 111 N.W. at 703–04. *Boyden* did not present a "chain of title" or horizontal privity issue. This case does. We do not see *Boyden* as helpful on this issue.

248

## III.  CONCLUSION

We reverse the trial court's determination that the Krepels' chain of title does not include the Krepels' claimed easement. The 1952 corrective deed from Edna Fassbinder to the Bankses is in the Krepels' chain of title. It remains for the parties and the trial court to litigate any remaining questions as to the efficacy of this grant to create an easement in favor of the Krepels.

Alternatively, we reverse the trial court's ruling that such chain of title is necessary to the Krepels' claim. It remains for the trial court and the parties to litigate any remaining questions as to the efficacy of those grants outside the Krepels' chain of title to create an easement in favor of the Krepels.[9]

*By the Court.*—Orders reversed and cause remanded.

---

[9]This includes any sec. 893.33, Stats., issues. Although the trial court referred to this statute, the essence of the court's ruling remained the "chain of title" analysis.