MUSCODA BRIDGE COMPANY, Respondent, vs. GRANT COUNTY, Appellant.

*November 7—December 3, 1929.*

For the appellant there was a brief by the *Attorney General, Suel O. Arnold,* assistant attorney general, and *Manfred S. Block* of Lancaster, district attorney of Grant county, and oral argument by *Mr. Arnold.*

For the respondent there was a brief by *Kopp & Brunckhorst* of Platteville, and oral argument by *Arthur W. Kopp.*

FOWLER, J. Two of appellant's contentions relate merely to matters of practice and these will be first considered. The defendant made a timely demand for a special verdict and as such verdict requested submission of two questions: (1) What was the fair market value of the strip of land taken? and (2) In what amount, if any, was the fair market value of the real estate of plaintiff which was not taken damaged by the taking of the strip, considering only the uses to which the real estate was put at the time of the taking? The court refused these questions and submitted to the jury one question: What sum will compensate the plaintiff for the damages it will sustain as a result of the relocation of the highway in question through its land? The defendant urges that the question submitted was not a special verdict; and that if

it was such the court erred to defendant's prejudice in not submitting two questions in substance as by it requested.

The special verdict statute, sec. 270.27, Stats., provides that the court shall on timely request submit a case on special verdict, by which is meant submitting to the jury for answer specific questions incorporating the controverted issues of ultimate fact. There is only one issue of ultimate fact in this case. It is: What is plaintiff's damage? The court might properly have submitted to the jury two questions, the answers to which would have formed a basis for determining the ultimate fact of damage, and in most condemnation cases it is perhaps preferable to do so. But it was in the discretion of the trial judge to cover the ultimate issue by one or two questions as he saw fit. Ordinarily, where the issue is simply what damage an owner has sustained by the taking of a strip or parcel of land for a road or other public use, two questions may well, perhaps best, be put in substance as follows: (1) What was the fair market value at the time of the taking of the owner's land considered as a whole? and (2) What was its such value after the taking? The difference will be the damage. While such submission might have been better here, the trial judge might properly, in his discretion, submit the issue of damage as he did. The use of the phrase "relocation of the highway" instead of "taking the strip of land" was unhappy, if not faulty. The latter phrase would have been better as calling attention more directly to the precise fact in issue.

The questions requested by defendant were formed to accord with the statement of the elements of damage contained in such cases as *Jeffery v. Chicago & M. E. R. Co.* 138 Wis. 1, 119 N. W. 879, and *Jeffery v. Osborne,* 145 Wis. 351, 129 N. W. 931. The idea there expressed is that the landowner is entitled (1) to the value of the strip taken considered as a separate entity; and (2) to the amount by which the remainder of the land is diminished by reason of

the taking of the strip. As to (1), the market value, for example, of a strip through a farm consisting of a quarter-section four rods wide and half mile or more long, is impossible of estimation. Such a strip is not salable. It has no market value. Its market value is wholly speculative. As to (2), the diminution of value involved is not that of the *remainder* of the land, but the diminution in value of the farm as a whole. As far as the remainder is concerned, the question is not how much the value of the *remainder* is diminished by reason of the taking, but how much is the remainder worth? The rule of the cases referred to is disapproved. The two values—that of the whole tract at the time of and after the taking—are all that is necessary to consider. Attempt to deal with the question of damages in any other way will surely lead to confusion of the jury and quite likely to error of the court as happened in *Jeffery v. Chicago & M. E. R. Co., supra,* and *Fritz v. Southern W. P. Co.* 181 Wis. 437, 195 N. W. 321. The rule as here stated has been expressly laid down in the following cases: *Abbott v. Milwaukee L., H. & T. Co.* 126 Wis. 634, 106 N. W. 523; *Riddle v. Lodi Tel. Co.* 175 Wis. 360, 185 N. W. 182; *Snyder v. Western Union R. Co.* 25 Wis. 60; *Watson v. Milwaukee & M. R. Co.* 57 Wis. 332, 15 N. W. 468.

Submission of the second question requested by defendant was properly refused because it restricts consideration to such use only as the real estate was put at the time of the taking. Any use to which it is reasonable to infer from the evidence that the land may be put to in the near future, or within a reasonable time, may properly be considered; and compensation may be awarded upon the basis of its most advantageous use. But the future uses considered must be so reasonably probable as to affect the present market value. Imaginary or speculative uses or value must be disregarded. 20 Corp. Jur. p. 769; 10 Ruling Case Law, p. 130; *Washburn v. Milwaukee & L. W. R. Co.* 59 Wis. 364, 16 N. W.

328; *Weyer v. Chicago, W. & N. R. Co.* 68 Wis. 180, 31 N. W. 710; *Alexian Brothers v. Oshkosh,* 95 Wis. 221, 70 N. W. 162. Under the evidence of this case the requested question was perhaps proper in form, as there was no evidence of likelihood of demand for the strip as a dam site or for a dock or boat landing. But if an actual use for either such purpose had been proved to be reasonably probable and to affect the present market value of the land, it would have been a proper subject of consideration.

The defendant contends that the court erred in receiving evidence of the value of the entire property. This objection in form as made may be untenable. But as to the toll-bridge itself, we are unable to see that its value entered at all into the question of damage. Such value was precisely the same that it would have been had the new bridge been located adjacent or near to plaintiff's land. Its value was not at all affected by the taking of plaintiff's land, but solely by the construction of the free bridge, whose construction was no invasion of plaintiff's rights and therefore caused it no legal damage. *Muscoda Bridge Co. v. Worden-Allen Co.* 196 Wis. 76, 219 N. W. 428. There was much evidence as to the value of the toll-bridge, all which plainly went to its value as a toll-producing bridge on the basis of no free bridge to divert traffic from it. All such evidence was improperly received and no doubt prejudicial, as was the testimony as to what other toll-bridges across the river had been sold for while operating without competition. In this connection we may fittingly consider defendant's contention that plaintiff's witnesses were incompetent to testify to the value of its property. Their testimony being in great part to the value of the toll-bridge as a toll-producing property on the hypothesis that no free bridge existed to divert travel from it and inadmissible for the reasons stated, it is perhaps idle to pass upon their competency to testify upon that point. We cannot say that they were incompetent to testify to the value of plaint-

iff's lots on the river bank or the lot on which the dwelling house and garage stand. No one but the engineer was shown to have any special knowledge to qualify him to testify to the value of the submerged strip. We are unable to see from the testimony before us that placing bridge piers on and a bridge over this strip appreciably affects the value of plaintiff's property. If it be shown on retrial that plaintiff's rock ledge and the adjacent territory make the ledge suitable for a dam site, that erecting a bridge over the condemned strip destroys or injuriously affects such suitability, and that there would be reasonable likelihood of use of its ledge for a dam site within some reasonable period but for the condemnation of the strip; or if it is shown that erection of the piers and bridge on and over the strip destroys or injuriously affects the availability of plaintiff's river bank for a dock and boat landing, and that there is reasonable likelihood of such river navigation within any reasonable period as to create a demand for a dock and boat landing at Muscoda; and if it reasonably appears that the facts thus shown enhance the value of plaintiff's property,—then there will be a different situation. But such inferences must rest on something more substantial than speculation and imagination, which is the only foundation for them that the evidence now before us affords.

Appellant contends that the court erroneously instructed the jury as to the rule of damages, and erroneously refused to give its requested instructions in that regard. The court's instructions on this point were as follows:

"In awarding damages for the taking of lands for highway purposes, the strip taken is to be valued as a part and parcel of the entire tract of which it forms a part; and the landowner is entitled to recover the difference between the fair market value of the whole property before the taking and the fair market value of what remains after the taking; and the actual use and intention of the owner is to be con-

sidered, as well as the adaptability of the property for some use in the future. . . .

"In determining the damages to which plaintiff is entitled for the taking of its land for highway purposes, you are not to consider as an element of said damages the loss plaintiff may sustain in the income of its present toll-bridge after the completion of a free bridge over the river at the place in question."

The request of the defendant upon this point that was refused is as follows:

"You are instructed that in determining the damages, if any, accruing to the plaintiff's property by reason of the taking of its property, you are to consider only such damage, if any, which is caused to the plaintiff's real estate. In determining such damages, if any, you are to disregard entirely the fact that the plaintiff is the owner of a toll-bridge, and you are to estimate such damages, if any you find, in the same manner as if the plaintiff did not own and operate a toll-bridge."

The instruction first above quoted is correct as applied to the ordinary case, except that the future use referred to should have been expressly limited to use within a reasonable time. But as applied to the particular case we are of opinion that it is insufficient for not pointedly excluding consideration of the toll-bridge as an element of value in estimating the damage done to plaintiff's land by condemnation of the strip. The instruction requested by defendant above quoted would have effected this, and it or some practical equivalent should have been given. The court's instruction second above quoted was hardly sufficient to exclude such consideration.

Appellant further contends that the court should have given the instruction by it requested defining the term "fair market value." The instruction requested was correct, though unnecessarily long and cumbersome. The court gave no instruction at all defining the term, or directly calling to

the attention of the jury that the only diminution of value involved was that of market value. Both points should have been directly covered.

The appellant contends lastly that the verdict was excessive, and that a new trial should be had for that reason, if for no other. Enough has been said to indicate that the judgment must be reversed. We consider that under the evidence the verdict is excessive. Whether as high an award can be justified by the evidence on a retrial is not now for decision. We regret our inability finally to determine the case, as the plaintiff has heretofore been twice before this court for determination of matters affecting its property arising out of construction of the free bridge involved, and an end of the litigation is highly desirable. We express the hope that the damage sustained by the plaintiff by the condemnation involved may be agreed upon and future expense avoided.

*By the Court.*—The judgment is reversed and the cause remanded for a new trial.