SMITH and wife, Appellants, vs. MILWAUKEE ELECTRIC RAILWAY & LIGHT COMPANY, Respondent.

*March 4—April 1, 1930.*

For the appellants there was a brief by *Whaley & Paulsen* and *Beck, Smith & Heft,* all of Racine, and oral argument by *Vilas H. Whaley* and *Carroll R. Heft.*

For the respondent there was a brief by *Shaw, Muskat & Sullivan* of Milwaukee and *Thompson, Myers & Helm* of Racine, and oral argument by *Peter J. Myers.*

. OWEN, J. Edward A. Smith and Mary Smith, his wife, owned a farm in close proximity to the city of Racine, consisting of about fifty-six acres. The farm is traversed by the right of way of the Chicago & Northwestern Railway Company in a northerly and southerly direction. Forty-six acres of the farm are west of this right of way and 9.72 acres are east thereof. The farm buildings are east of the right of way. The Milwaukee Electric Railway & Light Company condemned a 100-foot strip containing 1.76 acres immediately east of the Northwestern right of way. The commissioners appointed to appraise the damages awarded the owners $7,540 as compensation. In the circuit court the jury assessed the fair market value of the land taken at $2,092 and found that the value of the remaining real estate was diminished in the sum of $5,324.

The land lying east of the right of way is within the city limits of the city of Racine. The land lying west thereof is not. There was evidence to show that the land lying east of the right of way was adaptable to platting purposes and that the value thereof was $2,000 per acre.

The court submitted two questions to the jury, the first of which was, "What was the fair market value on April 17, 1929, of the strip of land condemned and taken in this proceeding?" and the second was, "In what amount, if any, was the fair market value of the real estate of the plaintiffs

which was not taken, diminished by the taking of the strip condemned, considering the uses to which the plaintiffs' premises were put on the 17th day of April, 1929, and such other uses to which said premises might be reasonably adapted, as the evidence in this case may establish?"

Complaint is made of the manner in which the question of plaintiffs' damages was submitted to the jury. The contention in this respect is based upon *Muscoda Bridge Co. v. Grant County*, 200 Wis. 185, 227 N. W. 863, decided since the instant case was tried. In that case it is recognized that the manner in which the question was here submitted finds sanction in prior decisions of this court. It was pointed out, however, that the actual damage sustained by the property owner in such cases ·is the difference between the value of his premises, of which the land taken formed a part, before and after the taking. This is the exact measure of the damages sustained by the property owner in such cases. It includes not only the value of the property taken but the diminution in value of the remainder of the land. A simple, direct way of fixing plaintiffs' damages is to ascertain the value of the tract out of which the property is taken before and after the taking thereof.

It was pointed out that the method employed by the trial court is confusing, and sometimes results in a duplication of damages, as was the case in *Jeffery v. Chicago & M. E. R. Co.* 138 Wis. 1, 119 N. W. 879, and *Fritz v. Southern Wis. P. Co.* 181 Wis. 437, 195 N. W. 321. The method here adopted in submitting the question to the jury was disapproved in the *Muscoda Case,* and it was recommended that the amount of the owner's damages be ascertained by the submission of two questions eliciting the fair market value of the tract out of which the land was taken before and after the taking. There may be instances in which these questions will not be adequate, as for instance where benefits exceed damages. But it seems plain that in the ordinary case the

difference between the fair market value of the tract out of which the land condemned is taken, before and after the taking, will reflect the exact damages to which the owners are entitled under the provisions of sec. 32.10, Stats. It is a more simple, direct, and less confusing method of submitting the issue, and we commend its use. It does not follow, however, that the method here employed in submitting the issue constitutes prejudicial or reversible error. If the verdict of the jury fairly reflects all elements of plaintiffs' damages, if they were permitted to consider every element of damage to which plaintiffs were entitled, if their verdict discloses that all such elements received their consideration, and their verdict in that respect is supported by the evidence, the judgment should not be reversed because this court thinks a more preferable method might have been employed in submitting the issues to the jury.

The appellants principally complain of the answer of the jury to the first question, by which they found the value of the land taken to be $2,092. They contend that the evidence shows that that portion of the farm lying east of the Northwestern right of way of which the strip taken by the condemnor formed a part, was worth $2,000 an acre for platting purposes, and that the verdict awards but $1,200 per acre. It appears at once that the jury valued this strip on the theory that it was suitable for platting purposes. There were only two purposes suggested to which the property was adaptable. One was that of farming, to which purpose it was then devoted, and for which purpose it was not valued by any one at more than $500 per acre. The other was platting purposes. The fact that the jury valued the land at $1,200 per acre indicates that they must have valued it on the theory that it was adaptable to platting purposes.

It is contended, however, that if it were valued as for such use it must have been valued at $2,000 per acre, because that was the lowest value placed upon it by any witness for such

purpose. But that does not follow. The witnesses valued the entire tract of eleven acres at $2,000 per acre. Of the entire tract, the strip taken was concededly the least valuable for platting purposes. The tract was bounded on the east by a street or highway. The distance from the street to the strip taken on the north was 454 feet; on the south, 367 feet. It was explained by the witnesses, with practical unanimity, that the only practicable way of platting the tract was to plat it in one-acre lots running from the street back to the right of way. It will be seen that these lots would be 454 feet long on the north part of the tract and 367 feet long on the south part of the tract. They all testified that cutting off 100 feet from the rear of these lots would have very little effect on the front-foot value of the property: at least two of the witnesses testified that it would not affect the value of the property more than $2 per front foot. As there were 953 front feet in the tract, the taking of this 100-foot strip would diminish the value of the plattable portion $1,906. It will be seen that this computation based upon the evidence in the case very closely approximates the value which the jury placed upon the land taken. It also negatives the idea that they were bound to value the land taken at $2,000 per acre. That figure was an estimate of the eleven-acre tract as a whole. It does not necessarily follow that each and every acre of the tract was of the same value. Upon a consideration of the record, the answer of the jury to the first question is not only well supported but appears to be a very intelligent appraisal of the evidence in the case.

The only other error complained of is the instruction of the court relative to the weight to be given the opinion evidence with reference to the value of the land. We discover no error in this respect; but even if there were, the verdict so faithfully responds to the evidence that it could not be deemed prejudicial.

*By the Court.*—Judgment affirmed.