DAVID H. McHALE, Claimant, *v.* STATE OF NEW YORK, Defendant. (Claim No. 29090.)

Court of Claims, January 23, 1950.

*Francisco Penberthy* for claimant.

*Nathaniel L. Goldstein, Attorney-General (Royal D. Woolsey* of counsel), for defendant.

GORMAN, J. This is a claim for damage as a result of the permanent appropriation of land by the State of New York, pursuant to section 30 of the Highway Law. Claimant owned a parcel of land located at Alder Creek Corners in the town of Boonville, Oneida County, New York. The property has been improved by the erection of a two-story building which is now used as a tavern. The land faced on State highway Route 28 and extended along that highway a distance of some 600 feet, with a depth of approximately 100 feet.

The State is in the process of constructing an improved highway which is known as the " Boonville Town Line — McKeever State Highway.'' This improvement is a four-lane highway leading from Utica and Central New York to Alder Creek Corners and from there to Boonville and the Thousand Island area along Route 12 and to Old Forge and the Adirondack area along Route 28. The four-lane highway as such, stops at Alder Creek Corners and becomes a two-lane highway from that point up Route 12 to the Thousand Islands and a two-lane highway up Route 28 to the Adirondacks.

At Alder Creek Corners, the intersection of Route 12 and Route 28, the improvement is a special semi-clover-leaf design, consisting of separate approaches, overpasses, underpasses and one-way highways. This semi-clover-leaf was designed to eliminate sharp curves and intersecting traffic and to increase the speed of the flow of traffic at Alder Creek Corners where traffic was congested.

It is in connection with this portion of the improvement that certain of the property owned by the claimant, has been appropriated. The portion taken consists of 0.268 acres at the easterly end of the parcel and leaves the remaining property with a frontage on the improvement of 141 feet, more or less, and a depth of approximately 434 feet.

The traffic to Old Forge and the Adirondacks from Utica and Central New York, prior to the construction of this improvement, proceeded north on Route 12 to Alder Creek Corners and there turned off to the right on Route 28 which leads northeasterly toward Old Forge. Traffic from Central New York traveling to Boonville, at Alder Creek Corners, continued north on Route 12. The point at which Route 28 intersected Route 12 was marked by a sharp curve of almost 90 degrees angle.

Surveys made by the New York State Department of Public Works revealed that the above intersection was a traffic bottleneck and a hazard. This was true not only because of the curve but because at this point, traffic coming south from the Adirondacks, merged with traffic proceeding south from the St. Lawrence area. To eliminate this problem, the State designed a special traffic plan and provided at Alder Creek Corners separate two-lane highways for traffic proceeding to and from the Adirondacks on Route 28. One lane is designed to carry northbound traffic and the other to carry southbound traffic. These two separate highways are identified on the engineer's map as Line B — carrying northbound traffic and Line D — carrying southbound traffic. The B, or northbound lane, leaves existing Route 12 approximately 2,300 feet southerly from the present Alder Creek Corners. The D, or southbound lane, enters existing Route 12 approximately 3,700 feet southerly of Alder Creek Corners. These two lines converge at the easterly end of the claimant's premises and at approximately the same point, intersect the old Route 28 which proceeds easterly from Alder Creek Corners. The point of this intersection is about 800 feet easterly of the corner and approximately 437 feet from the west end of claimant's premises.

This traffic plan also calls for the erection of an overpass, over the existing Route 12. The overpass and the approach to it is identified on the engineer's map as the C line. This C line is a loop that leaves the existing Route 12 about 800 feet south of Alder Creek Corners, passes up a ramp and over a viaduct onto the D line. This loop and ramp is designed for the sole purpose of channeling southbound traffic from Boonville on Route 12 to the Adirondacks onto the northbound lane of Route 28 without crossing the southbound lane of traffic proceeding down Route 28. On the portion of line D from its intersection with line C to its junction with Route 28, traffic in both directions is maintained. It is intended to effectuate the design of the plan by eliminating left-hand turns and intersecting lines of traffic.

At the point on the claimant's premises where the B and D lines converge, the design calls for a concrete mall. The purpose of this mall is to divide the two lanes of Route 28 so that the southbound traffic may be channeled down Route 28 and merged with the four-lane section of the highway and the northbound traffic may be channeled away from the southbound traffic proceeding toward the ramp. This mall is 275 feet in length and varies in width from three feet six inches on the ends to six feet in the center. It is to be constructed of a three-inch concrete curbing paved with macadam. The mall extends from the present pavement edge of old Route 28 in a southerly direction completely across the improvement adjacent to claimant's property. It is in effect a barrier erected between traffic on the northbound lane and claimant's premises and prevents claimant or any northbound traveler from reaching his property without traveling north about one and one-half miles on Route 28 to the village of Forestport and then returning south on Route 28 to the intersection of the old road. For all practical purposes, claimant's remaining property now fronts on a one-way, high-speed highway.

The construction of the C line loop and connecting ramp and overpass will eliminate left turns at the old intersection and route northbound traffic from Boonville around the loop to merge with the D line traffic. Old Route 28, as it passes claimant's property from Alder Creek Corners, therefore, will in effect become a closed road for such traffic.

The improvement, as it passes and crosses this property, is part of the approach to the ramp leading to the viaduct which carries southbound traffic on Route 28 to the four-lane section of the highway. There is a curve at this point which is banked away from claimant's premises and the remainder of the land

which is substantially level, is four and one-half feet below the level of the improved road at the highest point. Claimant contends that the situation forms a virtual pocket and prevents the utilization of the balance of his land for commercial purposes by reason of the narrow frontage, inadequate approach and prohibitive cost of necessary fill and retaining construction. He says, in substance, that the improvement has reduced the fair and reasonable market value of the property by a combination of circumstances, all of which are inextricably bound together.

In eminent domain proceedings, one who is deprived of his property should be permitted to prove all factors which are relevant in fixing its value. The useable value of the property for any suitable, legitimate business is always relevant in fixing its market value. (*Reisert* v. *City of New York,* 174 N. Y. 196; *Baumann* v. *City of New York,* 227 N. Y. 25.) " The true value of property depends upon its development and arises out of it " and we are not " to exclude from consideration the possibility of profitable operation." (*Sparkill Realty Corp.* v. *State of New York,* 254 App. Div. 78, 84, affd. 279 N. Y. 656.) The rule of just compensation made mandatory by both our State and Federal Constitutions should not be narrowly confined. Property owners whose lands have been pre-empted by the sovereign power of the State must be fully and fairly compensated for the losses which they have sustained. (*Town of Fallsburgh* v. *Silverman,* 260 App. Div. 532, affd. 286 N. Y. 594.)

Only a few general rules apply on the question of valuation in condemnation proceedings, and even these may yield to exceptional circumstances. (*Banner Milling Co.* v. *State of New York,* 240 N. Y. 533.) Where a portion of a parcel of real estate is taken for the public use, the owner is entitled not only to the value of the portion thus taken, but also to the consequential damages to the remainder, including the results of the use to which the portion taken is to be put. (*South Buffalo Ry. Co.* v. *Kirkover,* 176 N. Y. 301; *Flynn* v. *New York, W. & B. Ry Co.,* 218 N. Y. 140; *County of Erie* v. *Fridenberg,* 221 N. Y. 389; *Matter of Board of Water Supply of City of New York,* 277 N. Y. 452, 456.) In a case of this kind the damages are measured most easily and accurately by the difference between the value of the entire parcel before the taking and the value of the remainder after the taking. Such difference reflects both the value of the portion taken and the consequential damages to the remainder. The market value after the taking of necessity contemplates any diminution due to the use to which the pre-empted portion is to be put. (*Town of Fallsburgh* v. *Silverman,* 260 App. Div. 532,

affd. 286 N. Y. 594, *supra; Matter of City of New York* [*Rockaway Beach*], 288 N. Y. 75; *United States* v. *Grizzard,* 219 U. S. 180.)

As was said by Judge CARDOZO in *Jackson* v. *State of New York* (213 N. Y. 34, 35): " Condemnation is an enforced sale, and the State stands toward the owner as buyer toward seller. On that basis the rights and duties of each must be determined." In this discussion we are not dealing with damages based on the loss of business or profits therefrom, but with the application of the principle that consideration should be given to every element of damage reflected in arms-length sales negotiations. There are cogent arguments for the granting of an award for loss of business in this case. The evidence very conclusively establishes that the new high-speed highway as elevated across claimant's property has to a large extent destroyed the value of claimant's building as a tavern and that there is no other business use to which the building can reasonably be put. Most of the motor traffic, from which claimant has been accustomed to draw trade, now passes the rear or side of the inn, which presents a less attractive appearance to the new highway. It will be observed, that the property derived an important element of its value for the use to which it was put, from its location. It may reasonably be inferred that the changes suffered, would materially affect its value to a prospective customer. But there are direct authorities in this State and in the United States which prevent any inclusion in the award of this item. (*New York Tel. Co.* v. *State of New York,* 169 App. Div. 310, 322, affd. 218 N. Y. 738; *Katonah Lumber, Coal & Feed Co.* v. *State of New York,* 194 Misc. 311, and cited cases.) But compare *Matter of City of New York* (*Cross-Bronx Expressway*) (195 Misc. 842, 847), which excepts " serious sales impairment of the portion left " and *Town of Fallsburgh* v. *Silverman* (*supra*).

Mere diversion of traffic alone, regardless of the fact that the new road traverses a portion of claimant's land, will not support a judgment for consequential damages. The owner of land abutting on a highway has no property or other vested right in the continuance of a certain amount of traffic over that highway so long as he is not deprived of ingress and egress. The claimant may not obtain damages here because of the relocation of the highway which isolates the buildings from the new road.

Where land is taken *in invitum,* a citizen is entitled to the fair market value of his land for its highest and best available use. (*Matter of City of New York,* 198 N. Y. 84, 87; *Matter of Niagara, Lockport & Ontario Power Co.* v. *Horton,* 231 App. Div. 402,

405.) The erection of an embankment on the lands taken has been held to be an element of damage to the remainder (*Matter of Board of Supervisors of Herkimer County,* 140 Misc. 894), as is the destruction of a sylvan setting by taking a portion of lands for highway purposes. (*Board of Supervisors of Hamilton County* v. *Lawrence Brook Corp.,* 245 App. Div. 892.) Damage without legal injury should not have application where the person suffering the damage has a property right and the duty is imposed by the Constitution on the person causing the damage to refrain from causing the same without payment of compensation. The right being fixed by law, the question of whether such a right has been injured and such duty violated, is one of fact.

The market value of the remainder of claimant's property has been substantially reduced by the act of the State which he was powerless to prevent. The damage was incident to the construction of the highway and so directly resultant therefrom that failure to consider it would be inconsequent with just or adequate equivalence for his loss. Competent proof as to its existence and extent was produced. The authorities agree that all items of damage which are recoverable in the condemnation proceedings must be so recovered, and the award is a bar to the recovery of damages subsequently accruing. (*Cooper* v. *State of New York,* 48 N. Y. S. 2d 212.)

In a separate decision filed herewith we have made an award which we believe fairly and reasonably represents the value of the land appropriated, together with consequential damage to the remainder.