CARAZALLA and wife, Respondents, vs. THE STATE and another, Appellants.*

*April 4—May 3, 1955.*

---

* Motion for rehearing denied, without costs, on June 28, 1955.

594

596

For the appellants there were briefs by the *Attorney General* and *Richard E. Barrett,* assistant attorney general, and

*Robert C. Altman,* district attorney of Marathon county, and oral argument by *Mr. Barrett.*

For the respondents there was a brief by *Genrich, Terwilliger, Wakeen, Piehler & Conway* of Wausau, and oral argument by *Herbert Terwilliger.*

CURRIE, J. In considering appellants' contention that they are entitled to a new trial we find the issues presented on this appeal to be as follows:

(1) Was it error for the trial court to refuse appellants' request for an instruction which would have required the jury to disregard all evidence as to depreciation in the market value of the remaining portion of land after the taking which tended to show that such remaining land had lost its value for commercial purposes as a result of the highway relocation and making it a "controlled access" highway?

(2) Was it error for the trial court to refuse appellants' request for an instruction which would have required the jury to disregard all evidence as to damages for the alleged inconvenience caused the Carazallas, or a prospective buyer, during the construction of the new highway?

(3) Was the award of the jury excessive on the evidence submitted?

Because of the closeness of the farm to the Wausau city limits, the expert witnesses on behalf of the landowners testified that prior to the taking and relocation of the U. S. Highway 51, that portion of the farm fronting on old U. S. Highway 51 had value for commercial purposes which would be destroyed as a result of relocation of such highway. This was because practically all traffic would be diverted from the old roadway to the new highway, and, inasmuch as the new highway is to be a "controlled access" highway so that traffic cannot enter or leave the same as it crosses through the Carazalla farm, none of the remaining land fronting on such highway would possess any commercial value. The value for commercial purposes of the part of the farm abut-

ting on old Highway 51 was not based upon future potentiality but rather upon the fact that there were some business establishments located in close proximity to the Carazalla farm. These consisted of a farm-implement dealer, building-supply business, television-sales establishment, livestock dealer, trailer park, tavern, and overnight cabins. The expert witnesses who testified in behalf of the Carazallas took commercial value into consideration in giving their testimony as to the value of the farm before the taking, and the absence of commercial worth in their estimated value of the remaining portion of the farm after the taking.

The fact that no part of the Carazallas' farm was devoted to commercial use at the time of the taking did not render the admission of such testimony improper. In *Muscoda Bridge Co. v. Grant County* (1929), 200 Wis. 185, 190, 227 N. W. 863, this court stated:

"Any use to which it is reasonable to infer from the evidence that the land may be put to in the near future, or within a reasonable time, may properly be considered; and compensation may be awarded upon the basis of its most advantageous use. But the future uses considered must be so reasonably probable as to affect the present market value. Imaginary or speculative uses or value must be disregarded."

This court in *Alexian Brothers v. Oshkosh* (1897), 95 Wis. 221, 224, 70 N. W. 162, approved an instruction given to a jury in a condemnation proceeding as follows:

". . . that in determining the value of the land taken they [the jury] were to be governed by the fair market value at the time it was taken, for any purpose for which it might reasonably be used in the immediate future; that if the present value was enhanced 'by reason of its adaptability to some use to which it might be put in the near future, was so situated that it might be platted into city lots, and that its present value was thereby increased, such increase was a proper ground of assessment of damages;' that 'the actual use to which it is put must also be considered with the surrounding

circumstances; that you are not to include remote or speculative values, but only the value of the land when taken, with reference to its availability for any purpose to which it might reasonably be put;' that they 'should not take into consideration what it might be worth at some remote and future time, when it might be put on the market as lots, but you may consider its present value for such purposes.' "

The appellants contend that inasmuch as old Highway 51 is not being closed but remains as a usable roadway, any loss in value for commercial purposes will be due entirely to diversion of traffic from the old highway to the new relocated highway, and that no damages are recoverable for such diversion of traffic. Counsel for the landowners, on the other hand, concede that if there had been no taking of a portion of the Carazalla farm, the Carazallas could not have recovered damages as a result of diversion of traffic but that such damages are recoverable where there has been a partial taking, as in this case.

Where there has been a partial taking of land for highway purposes the measure of the landowners' damages is the difference between the value of the whole property before the taking and the value of that which remains after the taking. *Jeffery v. Osborne* (1911), 145 Wis. 351, 364, 129 N. W. 931, and *Nowaczyk v. Marathon County* (1931), 205 Wis. 536, 539, 238 N. W. 383.

In addition to stating the foregoing applicable rule as to damages, we deem the following extract from the court's opinion in the *Nowaczyk Case* to be relevant to the controversy here (p. 539):

"Sec. 32.10 (1), Stats., provides that in exercising eminent domain, 'except in the case of streets or highways,' no deduction shall be made because of any benefit which the parties may derive from the improvement other than 'special benefits.' In case of streets or highways, paragraph (2) of said section provides that both damages and benefits shall be assessed or allowed and the excess of one over the other

shall be stated. The kind of benefits is not limited to special benefits. It would seem that the benefits referred to in case of streets and highways must be something more than mere 'special benefits' else there would be no occasion for the exception in paragraph (1). If so, *they must include such benefits as accrue to the general public as well as the benefits resulting specially to the land taken."* (Emphasis supplied.)

To illustrate the application of the rule stated in the foregoing quotation, let us assume A and B are adjoining rural landowners, whose lands are not located within the limits of a village or city, and a new improved highway is constructed so as to bisect A's premises, resulting in a partial taking thereof. There is no partial taking of B's premises but the same do abut on the new highway. In determining A's damages for the partial taking there is to be offset against the same any benefits resulting to the remaining portion of his land as the result of the construction of the new improved highway to which his remaining land has access. On the other hand, such benefits are not assessable against the land of B because they are of the type referred to in the *Nowaczyk* opinion as accruing to the general public. On this point also see *Townsend v. State* (1950), 257 Wis. 329, 43 N. W. (2d) 458.

The learned trial court, in his memorandum opinion on motions after verdict, concluded that it was not error to have refused appellants' requested instructions that the jury disregard the evidence as to destruction of commercial value due to diversion of traffic from the old to the new highway. As his reasons for such conclusion, the learned trial judge stated:

"Counsel on both sides conceded that when a strip of land is taken for highway purposes, and the construction of the new highway adds to the value of the parcel of land remaining after the taking, that the benefits or increased value because of highway, should be deducted in computing the damages which should be awarded to the owner. *If such*

*benefits are to be considered in fixing the value of the property after the taking, then, in all fairness, it seems that the damages sustained by the owner because of the relocation of the highway upon his property should also be taken into consideration. In other words, if the owner is to be charged for the improvement to his property by the construction of the road on one side of his land he should be compensated for the damages sustained by him on account of the diversion of all or a part of the traffic from the highway abutting the other side of his property.* After all, the questions to be determined by the jury are, 'What was the fair market value of the property before the taking?' and, 'What was the fair market value of the property after the taking?' and any evidence that would help the jury in arriving at a fair and just answer to these questions should be admitted in evidence." (Emphasis supplied.)

Our review of the authorities directly bearing upon the point at issue convinces us that the foregoing-quoted statement from the learned trial court's memorandum opinion correctly states the law on the point at issue. For example, 18 Am. Jur., Eminent Domain, p. 905, sec. 265, declares as follows:

"The entire parcel is considered as a whole, and the inquiry is, how much has the particular public improvement decreased the fair market value of the property, taking into consideration the use for which the land was taken and all the reasonably probable effects of its devotion to that use. *It is immaterial that such damages might not be recoverable by mere adjacent owners, no part of whose land is taken.*" (Emphasis supplied.)

The most recent authoritative work on the subject of Eminent Domain is that authored by Alfred D. Jahr, former assistant corporation counsel, condemnation division, of the city of New York, published in 1953. At page 71, sec. 49, of such book, the author states:

"The owner, part of whose land is taken, is entitled to recover all the damages to his remaining property, *whether*

*such damage is general or special.* His measure of just compensation, which is guaranteed by the state and federal constitutions, must be full and complete and must include all damages to the remainder of his property including damages by reason of the use to which the portion acquired was taken. If, however, no portion of the owner's property was acquired for the public improvement, which causes the damage, in the absence of a statute specifically authorizing the payment for such damage, the owner has no remedy." (Emphasis supplied.)

The rule laid down in the foregoing extracts from American Jurisprudence and from Jahr, Eminent Domain, is well illustrated by the case of *Colusa & Hamilton R. Co. v. Leonard* (1917), 176 Cal. 109, 167 Pac. 878. In that case the plaintiff railroad sought to acquire a strip of land through defendants' farm for right-of-way purposes on which it planned to erect an embankment and place its railroad track on top thereof. The evidence disclosed that the farm was subject to be flooded by the Sacramento river and that such embankment would tend to prevent the escape of flood waters thereby damaging crops planted on the remaining portion of the farm not taken. Because of such evidence the defendants were awarded damages of $15 per acre for their remaining land lying on either side of the strip condemned, which award was upheld by the California supreme court. The decision points out that, if the railroad company had owned the strip originally, it could have erected the embankment thereon, thus interfering with surface waters so as to adversely affect the adjacent land of the defendants, without being liable to pay any damages therefor. However, the court points out that by reason of the partial taking such damages were recoverable because they decreased the value of that part of the farm not taken. In support of its conclusion, the court stated the following hypothetical case, which we believe to be equally applicable to the case at bar (176 Cal. 113, 167 Pac. 879) :

"A municipality owns a block of land in a highly desirable residence quarter of the city. It proceeds to build thereon a hospital for contagious diseases—in short, a pesthouse. The direct and immediate effect of this is to depreciate to a very substantial extent the value of the surrounding residence property. But while the court might listen with sympathetic ear to the lamentations of the owners of those properties, it could not salve their grief by compensation in terms of money because the city was exercising one of its unquestioned rights of ownership, and the injury which that exercise inflicted, though real, was *damnum absque injuria.* But in the same residence section the city by eminent domain seeks to condemn one half of a block owned by an individual for the purpose of erecting thereon a pesthouse. The depreciation in the value of the remaining property is marked, and measurable in terms of money. If the city sought to buy from the owner at private purchase this same property, no one would question but that the owner would, and properly would, fix as a purchase price a sum which would compensate him for the inevitable reduction in value of the remaining part of his land. When the city goes into court to acquire this same property by judicial decree, the same elements fairly enter into the transaction and are admissible in evidence under the very terms of our law."

Appellants' brief cites a number of decisions from other jurisdictions holding that damages due to diversion of traffic are not a proper item of damages in condemnation proceedings resulting in a partial taking. However, as pointed out by respondent, these cases were rendered in jurisdictions which do not follow the Wisconsin rule that general benefits resulting from the improvement, in the case of a partial taking by condemnation for highway purposes, are to be offset against the damages recoverable by the landowner. We, therefore, consider such authorities to be readily distinguishable for such reason. However, appellants, in their reply brief, state that both California and New York do permit general benefits to be offset against damages in eminent-domain cases involving partial taking and contend that the cases of *People*

*v. Sayig* (1951), 101 Cal. App. (2d) 890, 226 Pac. (2d) 702, and *McHale v. State* (1950), 198 Misc. 387, 94 N. Y. Supp. (2d) 684, support the position of appellants on the point at issue. With such contention we cannot agree.

*People v. Sayig, supra,* involved an alleged taking of a 15-foot strip of land in front of five premises used for commerical purposes in order to convert a three-lane highway into a four-lane highway. The California court held that there was already a public easement for highway purposes by dedication and public user over the 15-foot strip so that no compensation was due for the taking thereof. However, the property owners contended that as a result of the three-lane highway being converted into a four-lane highway, only traffic traveling in the two lanes nearest their premises could enter the same and that the traffic moving in the other two lanes in the opposite direction would have to proceed 500 to 1,000 feet beyond to a crossover and return in the opposite lanes of traffic in order to enter such premises. It was held that no damages could be recovered as the result of such diversion of traffic. An analysis of the case leads inescapably to the conclusion that the court did not .treat the situation as one of a partial taking in view of the finding that the 15-foot strip was already dedicated to highway use. If it had been held to be a partial taking then the principle announced in *Colusa & Hamilton R. Co. v. Leonard, supra,* would have been applicable.

We also do not interpret that case of *McHale v. State, supra,* as do appellants. That case involved a partial taking as the result of a highway relocation which diverted traffic from the landowner's tavern. The decision does state that damages due to diversion of traffic are not recoverable, but also declares that where land is taken by condemnation the owner "is entitled to the fair market value of its land for its highest and best available use." Then the court proceeds to state (198 Misc. 393, 94 N. Y. Supp. (2d) 690) :

"The market value of the remainder of claimant's property has been substantially reduced by the act of the state which he was powerless to prevent. The damage was incident to the construction of the highway and so directly resultant therefrom that failure to consider it would be inconsequent with just or adequate equivalence for his loss."

While the decision in *McHale v. State, supra,* is not as clear as it might be, we interpret it as holding that although the loss to the tavern business as the result of diversion of traffic was not recoverable directly as a separate item of damages, it was to be considered in determining the reduced value of the remaining portion of the owner's land.

Appellants have also placed great reliance upon the decision of this court in *Muscoda Bridge Co. v. Grant County, supra.* In that case the plaintiff corporation owned and operated a toll bridge on the Wisconsin river over which was routed a state trunk highway. The state then relocated the highway so as to cross the river on a free bridge to be constructed as part of this relocation. Such relocation resulted in a taking of a small portion of the land of the plaintiff corporation, which part was not essential either for operation of plaintiffs' bridge or for the approach thereto. This court, in its opinion, stated (p. 191):

"The defendant contends that the court erred in receiving evidence of the value of the entire property. This objection in form as made may be untenable. But as to the toll bridge itself, we are unable to see that its value entered at all into the question of damage. Such value was precisely the same that it would have been had the new bridge been located adjacent or near to plaintiff's land. Its value was not at all affected by the taking of plaintiff's land, but solely by the construction of the free bridge, whose construction was no invasion of plaintiff's rights and therefore caused it no legal damage. *Muscoda Bridge Co. v. Worden-Allen Co.* 196 Wis. 76, 219 N. W. 428. There was much evidence as to the value of the toll bridge, all which plainly went to its value as a toll-producing bridge on the basis of no free bridge to divert traffic from it. All such evidence was improperly re-

ceived and no doubt prejudicial, as was the testimony as to what other toll bridges across the river had been sold for while operating without competition."

It is apparent from the foregoing quotation that the court considered that it had held on the appeal reported in 196 Wis. 76, 219 N. W. 428, that any damages resulting from the opening up and operation of the near-by free bridge were not recoverable by the plaintiff bridge corporation. Neither of these two decisions gave any consideration to the issue raised on this appeal that the damages resulting from a partial taking which depreciates the remaining land of the owner because of the use to which the parcel taken is put, are recoverable under the rule that the recoverable damages are the difference between the value of the entire parcel before the taking and the value of the parcel which remains after the taking. Furthermore, there was a difference in wording of the applicable statutes in effect covering the *Muscoda Bridge Case* from the wording of sec. 84.09 (3) (a), Stats. 1953, which latter statute provides in part as follows:

"The commission may order that all or certain parts of the required land or interests therein shall be acquired by the county highway committee. When so ordered, the committee and the commission shall appraise and agree on the maximum price, *including damages,* considered reasonable for the lands or interests to be so acquired." (Italics supplied.)

Prior statute, sec. 83.07 (3), Stats. 1927, contained no provision relating to *"damages"* but only provided for appraisal of "the value of the property sought to be taken." For this reason we do not deem the *Muscoda Bridge Case* to be controlling in the instant appeal.

We are constrained to conclude that the trial court properly refused to give the jury the instructions requested by the appellants to the effect that the jury were to disregard any testimony relating to the decrease in value of the portion

of the farm which remained after the taking as a result of the destruction of its value for commercial purposes.

We now come to the second point raised by appellants, viz., that it was error for the trial court to refuse to give the jury a further requested instruction that it disregard any evidence as to any damages resulting for alleged inconvenience caused the owners, or a prospective buyer, during the construction work in relocating the highway. The trial court, during the course of the trial, overruled appellants' objection to testimony as to damages resulting from the inconvenience occasioned by the construction work, stating:

"It is not a compensable item in the sense that the jury will be called upon separately to find that damage, but it is an item to be taken into consideration in determining the value of the property after the taking. . . .

"It is an inconvenience that must be contemplated at the time the person buys, and it is within the purview and within the thought and mind of a person who buys at the time he buys immediately after the taking."

In other words, it was the theory of the trial court that a prospective buyer at the time of the taking would pay less for the remaining portion of the farm because of the inconvenience in carrying on farming operations during the construction work than he would otherwise have been willing to pay if he could immediately have made use of the portion of the farm without such inconvenience. It is our conclusion that the trial court's ruling on the admission of such evidence was correct and it was therefore proper to deny the requested instruction.

Appellants cite the cases of *Fiorini v. Kenosha* (1932), 208 Wis. 496, 243 N. W. 761, and *Dusevich v. Wisconsin Power & Light Co.* (1952), 260 Wis. 641, 51 N. W. (2d) 732, as requiring a contrary holding on our part. However, in both the *Fiorini* and *Dusevich Cases,* the property owners attempted to recover damages for loss of profits or sales as

separate items of damages and this court properly held that such items of damages could not be recovered in a condemnation proceeding. No attempt was made in those cases, in contrast to the procedure followed in the instant case, to prove a lessening in value of the remaining portion of the land not taken due to a loss of profits or sales.

The last contention advanced by appellants is that the damages are excessive, thereby necessitating a new trial. The two expert witnesses on the part of the landowners were Mr. Rundhamer, a competent real-estate broker residing in Wausau, and a Mr. Sayers, residing in the city of Tomahawk, Wisconsin, who has been doing appraisal work since 1913, and is a certified appraiser of the United States engineering corps and the United States board of civil service examiners. Rundhamer testified that the difference in value before and after the taking of the farm was $36,596, while Sayers' estimate of the difference in value before and after the taking was $27,520.50. On the other hand, two competent Wausau real-estate brokers testified as experts in behalf of the appellants, and their estimates of the difference in value before and after the taking were $5,850 and $7,300, respectively. In addition to the testimony of such expert witnesses, the jury also viewed the premises. We are unable to hold as a matter of law that the difference in value of $14,000 before and after the taking determined by the jury is excessive.

In *Dusevich v. Wisconsin Power & Light Co., supra,* the appellant landowners contended that the $1,250 damages awarded by the jury for the partial taking of land was grossly inadequate. In commenting on such contention this court, in its opinion, stated (p. 642) :

"Testimony as to the loss sustained by the taking varied from a low of $500 to a high of $6,500. The issue of damages was peculiarly for the jury. Having heard the testimony, observed the witnesses, and viewed the premises, we cannot say that we are in better position than they to determine the loss. *Krier v. Milwaukee Northern R. Co.* 139 Wis. 207,

120 N. W. 847; *In re Opening of Oklahoma Avenue,* 179 Wis. 136, 190 N. W. 1001."

*By the Court.*—Judgment affirmed.

The following opinion was filed June 28, 1955:

CURRIE, J. (*on motion for rehearing*). The briefs submitted by the attorney general and by American Automobile Association, *amici curiae,* in support of the defendants' motion for rehearing stress the argument that any loss of commercial value to the plaintiffs' remaining lands is due to the exercise of the state's police power and not to a taking by eminent domain. This is because the designation of relocated U. S. Highway 51 as a "controlled access" highway is grounded upon an exercise of the police power.

The general rule is that damage resulting to property through the exercise of the police power is not compensable.[1] We consider the following statement appearing in 11 McQuillin, Mun. Corp. (3d ed.), p. 319, sec. 32.27, to be particularly pertinent to the facts of the instant case:

"The question of what constitutes a taking is often interwoven with the question of whether a particular act is an exercise of the police power or of the power of eminent domain. If the act is a proper exercise of the police power, the constitutional provision that private property shall not be taken for public use, unless compensation is made, is not applicable."

Limited-access highways and their effect upon the rights of abutting property owners to compensation are the subject of three excellent law-review articles[2] in which are cited

[1] *Mugler v. Kansas* (1887), 123 U. S. 623, 668. 8 Sup. Ct. 273, 31 L. Ed. 205; *State ex rel. Carter v. Harper* (1923), 182 Wis. 148, 153, 196 N. W. 451, 33 A. L. R. 269; and Jahr, Eminent Domain, p. 6, sec. 3.

[2] Clarke, The Limited-Access Highway, 27 Washington Law Review (1952), 111. 121; Cunnyngham, The Limited-Access Highway from a Lawyer's Viewpoint, 13 Missouri Law Review (1948), 19; Freeways and the Rights of Abutting Owners, 3 Stanford Law Review (1951), 298.

the court decisions bearing on the question. The authors of all three articles agree that the limiting of access to a public highway through governmental action results from the exercise of the police power, and that in the case of a newly laid out or relocated highway, where no prior right of access existed on the part of abutting landowners, such abutting landowners are not entitled to compensation. On the other hand, the authorities cited in these articles hold that where an existing highway is converted into a limited-access highway with a complete blocking of all access from the land of the abutting owner, there results the taking of the pre-existing easement of access for which compensation must be made through eminent domain. However, if the abutting landowner's access to the highway is merely made more circuitous, no compensation should be paid according to the authors of these articles, and the majority opinion in *People v. Ricciardi* (1943), 23 Cal. (2d) 390, 144 Pac. (2d) 799, to the contrary is severely criticized. In the instant case the plaintiff landowners still have their right of access to old U. S. Highway 51 which has not been closed off.

We consider the case of *State v. Burk* (1954), 200 Or. 211, 265 Pac. (2d) 783, to be particularly in point on the issue now before us, as that case like the instant one, involved a partial taking of land for the relocation of a highway, and the relocated highway was made a nonaccess highway. The Oregon court held that no damages were recoverable in the eminent-domain proceedings for any deprivation of easement of access because the landowners never possessed such an easement as to the newly located highway. It was pointed out in the opinion that the making of the relocated highway a nonaccess highway was the result of the exercise by the state of its police power.

We are satisfied that both the learned trial court, and this court in its original opinion, were right in holding that in a case of a partial taking of land by eminent domain any damages to the remaining land, which results from the use to

which the parcel taken is to be devoted, is a proper item to be included in determining the value of the owner's remaining land after the taking. This is so even though such damage is of a type suffered by the public as a whole and is not peculiar to his remaining property.[3]

However, in our original opinion we failed to perceive that any damages to the remaining lands due to the exercise by the state of its police power in making the relocated highway a controlled-access highway are not recoverable. The reason for such lack of perception was that the institution of the condemnation proceedings and the designation of the relocated highway as a controlled-access highway were so interwoven that we considered the two to be an inseparable whole when actually they constituted two separate and distinct acts.

If relocated U. S. Highway 51 had not been designated as a controlled-access highway, but instead that part thereof located upon the parcel taken from the plaintiffs had been constructed on such a high embankment as to make it impracticable for passing traffic to reach plaintiffs' remaining abutting lands from such highway, the rule announced in our former opinion would be applicable. Such rule, however, is not applicable to a situation where moving traffic would have suitable ingress to, and egress from, plaintiffs' abutting lands from the relocated highway except for the fact that the state's police power has been exercised to prohibit the same.

It is, therefore, our conclusion that it was prejudicial error for the trial court to refuse to give to the jury defendants' requested instruction, that all evidence of loss of value for commercial purposes due to making the relocated highway a controlled-access highway, be disregarded. For this reason, the judgment appealed from must be reversed and the cause remanded for a new trial.

*By the Court.*—The prior mandate is vacated, and the judgment is reversed, and cause remanded with directions for a new trial not inconsistent with this opinion.

---

[3] *Crookston v. Erickson* (Minn. 1955), 69 N. W. (2d) 909.