UTECH, Respondent, v. CITY OF MILWAUKEE, Appellant.

*January 7—February 2, 1960.*

**354**

For the appellant there was a brief by *Walter J. Mattison,* city attorney, and *Ewald L. Moerke, Jr.,* and *Harvey G. Odenbrett,* assistant city attorneys, and oral argument by *Mr. Moerke* and *Mr. Odenbrett.*

For the respondent there was a brief by *Hoffman, Cannon, McLaughlin & Herbon,* attorneys, and *Ellis R. Herbon* of counsel, all of Milwaukee, and oral argument by *Ellis R. Herbon.*

FAIRCHILD, J. Four expert witnesses stated their opinions of the value of the Utech property before and after the taking by the city. Mr. Tiefenthaler and Mr. Bach were called by the owner, and Mr. Saudek and Mr. Pfeil by the city. The circuit court filed a decision in which the court's analysis of the problem, the method followed in determining

each element of value, and the figures used were carefully set forth. The court did not adopt the testimony of any one witness in all particulars. The total values before and after the taking arrived at by each witness, and found by the court, are set forth in the following table:

| | Tiefenthaler | Bach | Saudek | Pfeil | Circuit Court |
|---|---|---|---|---|---|
| Total value before taking | $120,300 | $112,200 | $79,645 | $93,184 | $103,457.21 |
| Total value after taking | $ 74,500 | $ 69,100 | $60,500 | $69,810 | $ 66,510.53 |
| Damages | $ 45,800 | $ 43,100 | $19,145 | $23,374 | $ 36,946.68 |

Both parties and the circuit court agree that the damages are the difference between the values of the tract as a whole before and after the taking. *Nowaczyk v. Marathon County* (1931), 205 Wis. 536, 238 N. W. 383; *Smuda v. Milwaukee County* (1958), 3 Wis. (2d) 473, 89 N. W. (2d) 186.

The findings made by the court must stand unless they are against the great weight and clear preponderance of the evidence. See *Carisch v. County Highway Comm.* (1934), 216 Wis. 375, 377, 257 N. W. 11. The city raises three questions on this appeal, and makes no other claim that the court's findings are not sufficiently supported. We shall, therefore, limit this opinion to the questions raised.

1. "On the basis of the record in this case, did the appraisers for the city use the 'before and after' method of appraisal?"

The city takes exception to a statement in the decision of the trial court concerning the testimony of the witnesses called by the city. The court's statement reads, in part, as follows:

"It is true that in several instances the appraisers for the city testified that they followed the 'before and after' theory in appraising the value of the property taken by the city and

the value of the property remaining to the Utechs after the taking. When their testimony is read and considered, however, wherein they give the breakdown of the value of the property taken and the value of the property after the taking, it becomes clearly apparent that they first determined the value of all the property before the taking, then they determined the value of the parcel taken by the city, and by subtracting the latter from the former they arrived at the value of the property remaining to the Utechs after the taking. This method, as stated above, does not conform to the rule enunciated in the cases herein referred to. It does not allow Charles Utech the damages which he was entitled to in that it does not compensate him for the damages resulting to the remaining property arising on account of the taking by the city."

We do not think that the quoted statement reflects any error of law committed by the circuit court. Mr. Tiefenthaler and Mr. Bach apparently were of the opinion that the size of the parcel in single ownership before the taking represented an element of value which was virtually destroyed by the taking. Mr. Saudek and Mr. Pfeil evidently did not agree. The court's statement correctly analyzes the method followed by the city's witnesses, and indicated the court's agreement with the proposition that some part of the value of the land before the taking was destroyed by the taking, and was not reflected in the value of the parcel taken.

2. "Is it proper in a partial taking, where property is developed to a use, for the appraisers to establish a different use, where none of the buildings contributing to that use have been disturbed, and there is no testimony by the owner indicating a different intention?"

The city points out that the owner had, for many years, been content to use his property in a certain manner. His business establishment was located in one corner, and his home in the opposite corner; he had something of a private park between. The city points out that the taking of the strip for West Cornell street did not interfere with the

operation of his business establishment, nor with his dwelling, and that the remaining property could still be used in the same manner as formerly, except that the park area between his dwelling and his plant had been converted into a street. The city points out that there is no testimony that the owner had intended to change his use of the property at any time in the near future. The city contends that under these facts the use of the property made by the owner was its most-advantageous use, and that the method of valuation followed by its witnesses was proper because they considered the present use of the property as the most-advantageous use.

The court, however, agreed with the owner's witnesses that the most-advantageous use of the frontage on North Teutonia avenue, 120 feet in depth, was for some business development permissible under the zoning of that parcel. The fact that the owner had not seen fit to use his property in that way was evidence to be considered upon the issue of the most-advantageous use, but it was not conclusive. The owner's choice of the particular use may be explained by factors unrelated to the value of the real estate as such. With respect to the frontage on North Twenty-Seventh street, the court found that although it was zoned so as to permit certain residential uses, and the millwork plant was a nonconforming use, the use which the owner was making of it was the most-advantageous use. To that extent, the court agreed with the city.

Although the city proceeded under the Kline Law (ch. 275, Laws of 1931, as amended), both parties agreed that sec. 32.10 (1), Stats., correctly sets forth the rules of valuation which should govern this proceeding. A portion of that section reads:

"In making such determination the commissioners shall consider the property upon the basis of its most-advantageous

use, but only such use as actually affects the present market value."

In *Muscoda Bridge Co. v. Grant County* (1929), 200 Wis. 185, 190, 227 N. W. 863, the court said:

"Submission of the second question requested by defendant was properly refused because it restricts consideration to such use only as the real estate was put at the time of the taking. Any use to which it is reasonable to infer from the evidence that the land may be put to in the near future, or within a reasonable time, may properly be considered; and compensation may be awarded upon the basis of its most-advantageous use. But the future uses considered must be so reasonably probable as to affect the present market value."

In *Carazalla v. State* (1955), 269 Wis. 593, 598, 70 N. W. (2d) 208, 71 N. W. (2d) 276, it was said:

"The expert witnesses who testified in behalf of the Carazallas took commercial value into consideration in giving their testimony as to the value of the farm before the taking, and the absence of commercial worth in their estimated value of the remaining portion of the farm after the taking.

"The fact that no part of the Carazallas' farm was devoted to commercial use at the time of the taking did not render the admission of such testimony improper."

The owner's witnesses testified concerning the trend of development in the portion of the city surrounding the Utech land and certain sales they considered comparable, as well as their own opinion. There was sufficient testimony to support the circuit court's reasoning as to the most-advantageous use of the property.

3. "Can property taken in eminent domain be valued by adding the cost of the improvements to the value of the land as zoned where the improvements have a different use from that of the land underneath?"

The Utech dwelling was located on the North Teutonia frontage, zoned for local business. The owner's witnesses and the court considered that the most-advantageous use of the entire North Teutonia frontage was for a business development. The city claims on this appeal that the court determined a value for the land along North Teutonia avenue for business purposes, and then added the value of the existing dwelling which would constitute an incumbrance if the land under it were to be devoted to business use.

Mr. Bach testified that he determined the land value of the parcel fronting on North Teutonia avenue at $200 per front foot, totaling $56,330; he added $11,250 for the dwelling and obtained a total value of $67,580. He explained as follows:

"Now, my explanation on why I was of the opinion that a prospective buyer would be willing to purchase this frontage at $200 a front foot for the land and then also pay $11,250 for the building in order to acquire this site for its highest and best use is based on my own experience in seeing the development along these streets that I have recited before by business developers when they are faced with a nice piece of property that may have some residence structure on it. Now, my observation and experience—it all depends upon what the value of such a structure is, whether a buyer would be willing to pay something for such a structure and add it to the value of the land. If this were an expensive, modern, or brick home that was worth $30,000, of course it would be improper to add such a value to land value because no buyer would be willing to pay, in my opinion, so much in excess of the land value to acquire that site. However, because we have such a large piece of frontage here, 281 feet, it develops that the $11,250 would only be adding 20 per cent —the buyer would only be compelled to pay 20 per cent more than the land value. The land value of $56,000 and 20 per cent of that figures about $11,250. In other words, in my experience, developers will pay 20 per cent more in order to acquire a site and to pay something for the buildings. As

soon as that gets to be higher than that percentage, then a developer naturally will either look to some other site or he would not purchase the site because it would be too expensive to demolish the buildings."

The circuit court applied Mr. Bach's reasoning, but concluded that the figure of $200 per front foot was too high and substituted $180.

Using Mr. Bach's computation of land value at $56,330, the figure of $11,250 did not exceed 20 per cent of the land value. The court, however, cut the land value to $50,697, figured at $180 per front foot. Twenty per cent of this figure would be $10,139.40, and $11,250 (the amount allowed for the dwelling by Mr. Bach and by the court) exceeds that by $1,110.60. Since the only testimony which justifies an addition on account of the dwelling to the so-called land value for business development limits the addition to 20 per cent of the land value, the value found by the court was excessive by $1,110.60, and the judgment must be reduced by $1,110.60, plus interest thereon.

*By the Court.*—The judgment is reduced by $1,193.90 and, as so modified, affirmed.

HALLOWS, J., took no part.