KREUSCHER and wife, Respondents, v. WISCONSIN ELECTRIC POWER COMPANY, Appellant.

*March 30—April 27, 1965.*

352

For the appellant there was a brief by *Heide, Sheldon, Hartley & Thom* and *W. A. Sheldon,* all of Kenosha, and oral argument by *W. A. Sheldon.*

For the respondents there was a brief by *Vaudreuil & Vaudreuil* of Kenosha, and oral argument by *Leo E. Vaudreuil.*

FAIRCHILD, J.   Defendant's principal challenge is to the sufficiency of the evidence to support the verdict.  It also claims to have been prejudiced by evidence which the jury heard, but was later stricken, and by alleged improper argument.

Defendant points out that the easement and transmission line do not materially impair the usefulness of plaintiffs' land as a farm.  Farm machinery can pass under or around the tower with little inconvenience.  Defendant contends that residential development of plaintiffs' land is a speculative and merely possible future occurrence, too remote for consideration in determining market value.  Plaintiffs contend that the most-advantageous use of the land, within a reasonable time in the future, is for residential development, even though it has been used for farming up to now.  They claim that the strip subject to the easement (4.722 acres) is useless for

residence purposes and that the presence of the transmission line impairs the value of the remaining 74.278 acres east of MB for residential development.

Mr. Fiedler was the only expert witness on value called by defendant. He resides in Milwaukee, and makes land appraisals, having retired from the farm-loan department of an insurance company. In his opinion farming is the best use for plaintiffs' land; the market value of the entire farm was $84,665 before the taking and $84,215 after the taking, the damage being $450. It is undisputed that there is no present substantial development of land in the town of Paris for residential purposes.

Plaintiffs called two expert witnesses. Dale Kreuscher is a real-estate broker living on a farm he owns in the town of Paris. He has noted an increase in demand for small residence tracts. He has made sales to people from Chicago who can drive to work there on I-94 in an hour and fifteen minutes, and to people from Kenosha and Racine. The prices for such property are rising. He had purchased a 70-acre tract on the west side of MB north of plaintiffs' property. He has not subdivided, but has sold one acre and a half lot for $1,660 and another for $2,000. He considered plaintiffs' land east of MB worth $400 per acre before the taking. His opinion of the value before taking was $30,000 (derived by multiplying $400 times 75, rather than 79). He deducted $1,890 (4.722 acres, rendered useless, at $400 per acre) and deducted $7,500 more (75 times $100, estimated loss of value per acre because of the undesirable presence of the tower). This produced a difference of $9,390 and a value after the taking of $20,610.

Leonard Smith is a real-estate and mortgage broker living in the adjoining town of Somers, with training in appraisal work. In his opinion, subdivision of plaintiffs' land into acre or acre and one half lots would be the most-

advantageous use of the property because of access from Racine, Milwaukee, and Chicago. There is a complete subdivision to the north in Racine county, just west of I-94 and adjoining it. He considered the plaintiffs' property east of MB before the taking worth $425 per acre, or $31,875 for 75 acres. He deducted $2,000 (4.722 acres at $425 per acre) and $6,750 more ($90 average loss of value on each of 75 acres). This produced a difference of $8,750 and a value after the taking of $23,125.

Plaintiffs' experts considered that the transmission line affected the value of the land east of the road, only.

The record shows nothing with respect to the value of the farm buildings except a statement by Dale Kreuscher that they are of no great value. Apparently they are east of MB. It may be inferred that Fiedler placed a substantial value on the buildings and that this is reflected in his valuation of the farm as a whole.

The court instructed the jury:

". . . In answering all of the questions in the special verdict it is proper for you to take into consideration, as shown by the evidence, the use to which the property was put by the owner, or any other use to which it was reasonably adaptable, and you may base your determination on the most-advantageous use shown to exist either at the time in question or within a reasonable time in the near future. The future uses considered, if any, must be so reasonably probable as to affect present market value. They must not, however, be mere possible uses based upon mere fancy, speculation, theory or conjecture."

The instruction is supported by decisions of this court.[1]

---

[1] *Alexian Brothers v. Oshkosh* (1897), 95 Wis. 221, 223, 70 N. W. 162; *Muscoda Bridge Co. v. Grant County* (1929), 200 Wis. 185, 190, 227 N. W. 863; *Carazalla v. State* (1955), 269 Wis. 593, 598, 70 N. W. (2d) 208, 71 N. W. (2d) 276; *Utech v. Milwaukee* (1960), 9 Wis. (2d) 352, 356, 101 N. W. (2d) 57. See also sec. 32.09 (2), Stats.

The jury must have rejected Mr. Fiedler's testimony that the entire property was worth $84,665, for they found it to be worth $76,600 before the taking. On a per-acre basis, this was $390 per acre. They must have concluded that it was worth as much as $76,600 only if residential development were considered its most-advantageous use, and apparently found that the presence of the high line destroyed the usefulness of the 150-foot strip for residence purposes and depreciated the remaining land east of the road about $25 per acre. The after-taking value found by the jury ($73,000) equals the sum of the value of the 117 acres west of MB at $390 per acre plus the value of land east of MB (taken at 75 acres) exclusive of the 150-foot strip at $365. The figures used are more favorable to defendant than the testimony of Dale Kreuscher and Smith. The jury must have inferred from their testimony that demand of buyers for this property for subdivision for residential purposes is reasonably probable in the near future and affects present market value. We cannot find the testimony inherently incredible, nor say as a matter of law that the inference cannot reasonably be drawn.

Counsel for defendant has pointed out two instances where evidence was stricken by the court, upon motion. One was an incomplete statement as to the provisions of statutes relating to subdivision. The portion stricken could not have been prejudicial. The other was an answer that there was the possibility that the company would come in for maintenance purposes, and a buyer would shy away because of this possibility. It is questionable whether the terms of the easement would permit defendant to cross the other land of plaintiffs in order to enter the 150-foot strip for maintenance purposes, but we deem it highly improbable that the jury's hearing of the answer had any material effect upon the verdict.

Counsel for defendant made two objections during the argument to the jury on behalf of plaintiffs. The argument was not recorded. One objection took issue with a reference to residences on state highways in the county. The court noted the objection, agreeing that there was no evidence on the matter, but pointing out that the argument was offered as background. From the record we are unable to say that any impropriety was prejudicial to defendant. At another point counsel for defendant objected to argument about the width of the strip taken. The court said:

"*Court*: I appreciate there is no issue as to the width of the easement and why they took it, but counsel may draw inferences from the taking if they are pertinent to value."

On motions after verdict the court recalled that:

". . . plaintiffs' counsel argued in substance that the taking of a 150 foot strip did not appear to be necessary for construction needs and therefore was apparently or presumably taken to insure further safety. The argument went on as I recall that therefore it would appear that the company realized there was an element of danger which might very well affect the market value of these lands for home site purposes so far as the buyer was concerned. My ruling must, of course, speak for itself. I thought then and I believe now that the argument was fair comment as long as the jury understood there was only the question of value involved. I do not believe that the remark was prejudicial. It seems to me that the verdict itself reflects no prejudice."

We find no prejudicial error.

*By the Court.*—Judgment affirmed.

GORDON, J., took no part.